VAN R. WHITE, R. A. WILKINSON, W. R. HUPMAN, TALMADGE M. JOBE, T. E. PENDER, J. M. McINTYRE, ARTHUR A. BRADLEY, W. B. JAMES, JR., W. S. HARRIS, F. M. SOUTHERLAND v. NEAL SMITH AND FIRST SAVINGS AND LOAN ASSOCIATION.

(Filed 12 January, 1962.)

**Building and Loan Associations § 1; Corporations § 49; Mandamus § 1.—**

Both under the common law and provisions of statute stockholders have a right to know the names of their associates for the purpose of conducting an effective campaign in preparation for a stockholders' meeting, G.S. 55-37(a) (3), G.S. 55-64, which right extends to the shareholders of a building and loan association, G.S. 55-3(a), and mandamus is expressly authorized to compel compliance, G.S. 55-37(b).

APPEAL by defendants from *Clark, J.*, June 1961 Civil Term of ALAMANCE.

Plaintiffs, shareholders in defendant association, instituted this action to obtain a writ of mandamus requiring defendants to provide plaintiffs an opportunity to inspect the records of the association to ascertain the names, addresses, and number of shares held by each shareholder so that plaintiffs might solicit proxies for use at shareholders' meetings.

Defendants denied plaintiffs' right to the information sought, insisting the records were confidential.

The facts found, which we summarize, are:

The association was organized pursuant to the provisions of subchapter 1, c. 54, of the General Statutes. It had, in February 1961, 3053 shareholders. Its charter provides: "The affairs of the Association shall be managed by a Board of not less than five nor more than fifteen directors, to be elected at each annual meeting of the shareholders for a term of one year . . ." The bylaws provide for both special and annual meetings of the shareholders. Special shareholders' meetings may be called by the president or a majority of the directors or by twenty-five members. Twenty-five shareholders suffice to constitute a quorum at shareholders' meetings. Anyone designated as a proxy must be a shareholder. Written authority of the proxy must be filed with the secretary not less than forty-eight hours before the meeting. Members of the association are those who hold one or more of its shares, "and each member shall be entitled to one vote in its meetings of shareholders, regardless of the number of shares held by him," except at meetings called to consider amendments to the charter when "a majority of the stock at any meeting for said purpose shall be sufficient to adopt such amendments."

Defendant Smith is the executive vice president and secretary of

the association and as such has custody of the books and records of the association. At the annual shareholders' meeting in February 1961 not more than 56 members were present personally. Attendance at the last seven annual meetings has been between 26 and 56. At that meeting a resolution was adopted reducing the number of directors from eleven to nine. Although a majority of those present in person voted against the resolution, it was carried by defendant Smith, casting the votes of 98 members for whom he had been designated as proxy.

In addition to the foregoing summarized statement of facts, the court specifically found: "That the plaintiffs seek the aforesaid information as to the record of shareholders for the purpose and in order to call upon, discuss with, campaign among and solicit proxies from other shareholders in preparation for shareholders' meetings whether called by them or others wherein changes in the charter and by-laws and composition of the Board of Directors may be voted upon and is for no purpose other than proper interest in the organization, management and policies of the defendant Association."

On the findings made the court held that plaintiffs were entitled to know the names and addresses of the shareholders of the association, which information could be furnished by defendants, or if they declined to do so, then plaintiffs could inspect the books for the purpose of ascertaining the names and addresses of shareholders. Defendants appealed.

*Dalton, Long & Latham for plaintiff, appellees.*
*L. J. Phipps and Howard Manning for defendant, appellants.*

RODMAN, J.  Appellants state as the single question for determination: "The question involved in this case is the right, if any, of one or more members or shareholders of a savings and loan association to obtain a list of the names and addresses of the members of the association for the purpose of discussing with, campaigning among, and soliciting proxies from other members or shareholders in preparation for a shareholders' meeting."

The answer to the question propounded requires a determination of the public policy of this State ascertained by a consideration of the common law and legislative enactments modifying that law.

At common law stockholders in private corporations have the right to make reasonable inspection of a corporation's books to assure themselves of efficient management. *Respess v. Spinning Co.,* 191 N.C. 809, 133 S.E. 391; 13 Am. Jur. 482.

Chapter 2, P.L. 1901, is entitled "An act to revise the Corporation Law of North Carolina." Sec. 38 of that Act required every domestic

corporation to keep at its principal office a stock book "which shall contain the names and addresses of the stockholders, the number of shares held by them respectively, which shall at all times during the usual hours for business be open to the examination of every stockholder . . ." The books so required to be kept are determinative of a challenged right to vote.

Manifestly this statutory provision was intended to provide each shareholder of a domestic corporation with adequate information to campaign among and solicit proxies from other members or shareholders in preparation for a shareholders' meeting.

The quoted provision of the 1901 Act was incorporated in each subsequent codification of our statutory law. See Revisal, s. 1180; C.S. 1170; G.S. 55-107 (1943 ed.). It remained in force until 1 July 1957 when c. 1371, S.L. 1955, took effect. That Act, entitled "Business Corporation Act," is c. 55 of the 1960 edition of the General Statutes. The 1955 Act contains two sections relating to records which must be kept to show stock ownership. G.S. 55-37(a) (3) requires corporations to keep "a record of its shareholders, giving the names and addresses of all shareholders and the number and class of shares held by each." This section does not specifically provide for an inspection of the record by the shareholders, but it does provide: "Any shareholder may apply for a writ of mandamus to compel a corporation and its officers and directors to comply with this section." But section 37(a) (3) is supplemented by 55-64, which requires an alphabetical list of the shareholders with their addresses and number of shares held by each. This alphabetical list must be kept open and subject to shareholders' inspection for at least ten days before each stockholders' meeting.

The explanatory comment accompanying the bill which became the Business Corporation Act makes it clear that the right of a shareholder to know his associates and the extent of their holdings was not abridged but enlarged. The comment under sec. 64 says: "Purpose: To provide vital information as to shareholdings for the benefit of any shareholder. Present N. C. counterparts: G.S. 55-107 does not require a voting list such as this, but does make the stock and transfer books available to the shareholder."

If these statutory provisions are applicable to building and loan associations, plaintiffs have an undoubted right to know in time to wage an effective campaign for the election of directors the names of the other shareholders.

Do these provisions apply to building and loan associations? We think clear legislative history demands an affirmative answer. The Legislature of 1903 appointed a commission "to compile, collate, revise, and digest all the Public Statute Laws of this State, now in force

. . ." See c. 314, P.L. 1903. Sec. 3 of that Act provided: "The Commissioners shall designate such statutes or parts of statutes . . . as shall seem to them necessary to improve and perfect the whole." The commission was directed to file its report not later than 15 November 1904. In its codification of the laws relating to building and loan associations it exercised the discretionary power given it by sec. 3 of the Act of 1903 and inserted what is now G.S. 54-7. The 1905 Legislature approved the work of the commission appointed in 1903 and enacted a codification known as the Revisal of 1905. The commission's recommendation that building and loan associations should be subject to the laws relating to private corporations became sec. 3882 of the Revisal of 1905 and has been a part of our law since that date.

Appellants, in support of their contention that the record of shareholders is confidential and not subject to inspection by stockholders generally, rely on *Daurelle v. Traders Federal Savings & Loan Ass'n,* 104 S.E. 2d 320. There, plaintiff, a shareholder, sought to obtain a list of the shareholders and their addresses. The corporation declined to permit him to make an examination. He sought a writ of mandamus to compel the association to permit inspection. Prior to the hearing defendant association, over plaintiff's protest, but as authorized by statute, called and redeemed his shares. The lower court denied the writ. This ruling was affirmed on appeal. The appellate court based its ruling on two grounds: First, under the statutes of West Virginia, a shareholder of a building and loan association had no right to inspect its records. It said: "Comparison with and consideration of the provisions of the earlier statutes, which have been omitted from the present statute and the Code of 1931, and the provisions of the present statute, clearly indicate that in enacting the present statute the Legislature intended to deprive the stockholder of his common-law right to inspect the books and records of the corporation and to give him instead only such rights of that nature as are expressly mentioned in the statute. To give the statute any other meaning or effect would emasculate the statute and defeat the purpose of the Legislature in enacting it." As an additional reason for affirming the ruling of the lower court, the appellate court held that the association was acting in its lawful rights when it called and redeemed plaintiff's stock, and since he had ceased to be a shareholder, he could in no event have the right to inspect.

*Ulmar v. Falmouth Loan & Building Ass'n,* 45 A. 32, *State v. Italo-American Homestead Ass'n,* 149 So. 449, and *State v. Home Mut. Building & Loan Ass'n,* 265 N.W. 701, which deny a shareholder of a building and loan association the right to inspect books in general are

based on interpretations of the statutes of those States. Each State, of course, must decide for itself its public policy.

As we interpret our statutes, our Legislature has declared a different public policy. The right to inspect stock books in banks is specifically given. G.S. 53-85. As previously noted, specific provision is made for inspection of books of private corporations. Mandamus is expressly declared the appropriate means of compelling compliance. G.S. 55-37(b). The Business Corporation Act is applicable "to every corporation for profit, and, so far as appropriate, to every corporation not for profit having a capital stock . . ." G.S. 55-3(a). Building and loan associations do have, by express statutory provision, a capital stock. G.S. 54-5.

We perceive no sound reason why stockholders in private corporations should be permitted to know the names of their associates and thereby conduct an effective campaign for the election of those they deem most competent to conduct the affairs of the corporation, but this right should be denied to those who invest in shares of building and loan associations. *Henzel v. Patterson Building & Loan Ass'n No. 2*, 194 A. 683, supports the conclusion here reached.

The judgment circumscribes and limits the right of inspection in such manner as to prevent an inspection for an improper purpose.

Affirmed.