MANNING P. COOKE v. R. W. OUTLAND, PRESIDENT AND DIRECTOR OF THE BANK OF RICH SQUARE, R. B. OUTLAND, VICE-PRESIDENT AND DIRECTOR OF THE BANK OF RICH SQUARE, AND MRS. R. B. OUTLAND, W. C. CONNER, AND A. A. BRYAN, DIRECTORS OF THE BANK OF RICH SQUARE, AND THE BANK OF RICH SQUARE.

(Filed 24 November, 1965.)

1. Statutes § 5—

Even though an amendment limiting the application of a statute provides that the amendment should not affect pending litigation, such amendment is pertinent in an action instituted prior to its effective date for the purpose of showing that prior to the amendment the Legislature considered the statute to be applicable to the excluded class.

2. Corporations § 4—

In the absence of statutory restriction, a shareholder in a private corporation has a common law right to inspect and examine the books and records of the corporation at a proper time and place for a proper purpose, and this right may be enforced by mandamus, but such right is not absolute but is addressed to the sound discretion of the court and does not lie to permit a mere fishing expedition or for a purpose not germane to the protection of the stockholder's legitimate interests as a stockholder.

3. Same—

By provision of statute in this State, G.S. 55-38, a shareholder owning five per cent of the shares of a private corporation and who has held such shares for a period of six months is entitled to inspect the records and books of the corporation at a proper time and place for a proper purpose.

**4. Same;    Banks and Banking § 1—**

The Business Corporation Act applies to domestic banks, and in the absence of statutory restriction a shareholder of a banking corporation has the same right as a shareholder in any other private corporation to inspect its records and books at a proper time and place for a proper purpose. The statutory restriction contained in the 1965 amendment to G.S. 55-38 is not applicable to this action instituted prior to the effective date of the amendment.

**5. Same—**

Written demand of a shareholder for inspection of the records and books of a corporation for the purpose of enabling the shareholder to determine the value of his stock and to investigate the conduct of the management of the corporation to determine whether it is being efficiently managed, states proper purposes for inspection, and the burden rests upon the corporation and its officers, if they desire to defeat the demand, to allege and prove that the demand was not made for a proper purpose germane to the stockholder's status but was to advance a speculative purpose or some other improper purpose.

**6. Same—**

The right of a qualified shareholder to inspect the records of a bank for a proper purpose at a proper time and place may not be denied upon the contention that the examination would violate the confidential relationship between the bank and its customers.

**7. Same—**

The statutory powers vested in the State Banking Commission and the Commissioner of Banks do not affect or curtail or prevent the right of a qualified bank shareholder to inspect the records of the bank for a proper purpose, and such right may not be denied on the ground that the shareholder had failed to exhaust his administrative remedies before the Commissioner of Banks or the Banking Commission.

LAKE, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Bundy, J.,* 18 January 1965 Session of NORTHAMPTON.

Civil action in the nature of *mandamus* by plaintiff, a shareholder of record in the Bank of Rich Square, a domestic corporation, to enforce his rights, pursuant to G.S. 55-38(b), to examine the books and records of account and minutes of the Bank of Rich Square. In his petition he also alleges that he is entitled, pursuant to G.S. 55-38(d), to secure a judgment against the individual defendants, jointly and severally, for $500, as a penalty by reason of their refusing to allow him, pursuant to his written demand, to make such an examination of the books and records of account and minutes of the Bank of Rich Square, and he also alleges in his petition that he

is entitled to secure a judgment against the individual defendants, jointly and severally, for such other damages to which he may be entitled.

These facts are alleged in the petition, and admitted to be true in the joint answer of defendants: The Bank of Rich Square is a domestic corporation created by private law of the General Assembly at its 1903 Session. It has outstanding 500 shares of common stock, and no other stock. The individual defendants are officers and directors of the Bank of Rich Square. R. W. Outland is president and director of the Bank, and he and members of his immediate family own 337½ shares of its outstanding stock. Ownership of its remaining 162½ shares is divided among 21 minority stockholders, of whom plaintiff is the largest shareholder owning 17½ shares. Plaintiff is "a qualified shareholder" of the Bank within the language of G.S. 55-38(a), in that he has been a shareholder of record in the Bank for at least six months immediately preceding his demand for an examination and production of the books and records of account of the Bank.

This is a summary of the remainder of his petition: By letter dated 11 September 1964 he made written demand upon defendants, and each one of them, that he be given the right at reasonable times, for proper purposes, to examine at the place where they are kept and to make extracts from them, the books and records of account of the Bank of Rich Square, and he stated in his written demand the proper purposes for which he desired to make such examination; that a copy of his written demand is attached to his petition, marked Exhibit A, and made a part thereof. Exhibit A is a copy of a letter addressed to R. W. Outland, president of the Bank of Rich Square, and purports to have been sent by registered mail. This is a summary of the pertinent parts of Exhibit A, except when quoted: On 9 January 1964, there was presented by the president of the Bank of Rich Square at the Bank's annual stockholders' meeting a complete annual president's report, a 1963 Statement of Income and Dividends (Comparative 1962-63). An examination of this statement shows many items included therein which are equivocal. Many questions are presented by the Bank's published Call Reports of Condition of the Bank, and of the loan policy, which questions need clarification. There appear to be variations between reasonable estimations of this stockholder and those shown by the Bank's capital account changes for four consecutive periods of 1963, and this stockholder desires to ascertain the reason for the variations and the manner in which they were derived. There appear to be variations between reasonable estimations of this stockholder and those shown

by the Bank's capital account changes for the four report periods of each year beginning with the year 1950 and for each succeeding year up to the present time. In the office of the register of deeds for Northampton County there appear on the public record all the recorded, secured deeds of trust, lien bonds and chattel mortgages of the Bank of Rich Square. Many questions arise from the descriptive and nondescriptive appearances of these recorded loans as well as those instruments securing loans from the Bank of Rich Square which are not recorded. Inasmuch as the general deposit accounts of the Bank do not appear to be a factor in the assessment liability of this shareholder's stock, he has no desire to examine any depositors' accounts in the Bank except those accounts of officers, directors, and employees. He wishes to be assured there is an absolute lack of preferential treatment, that good faith prevails in the operation of the Bank, and that the Bank is not operating in a manner that is oppressive to its customers, stockholders, and the public. For the purpose of ascertaining the true financial condition of the Bank, the present and potential value of his stock in the Bank, the efficiency of its management, the good faith of its officers, and the probability and extent of assessment liability of the stock which he owns, he deems it necessary and proper to request to examine "the books, records, and statements of the Bank of Rich Square in reference to the loans made by the Bank from the beginning of the year 1950 up to the time of my inspection of the Bank's records." His demand for an examination of the Bank's records was refused.

Pursuant to the provisions of G.S. 55-38, he has a clear legal right to be allowed to examine the books and records of account of said Bank, which are in the actual or constructive possession of defendants, and defendants have a clear legal duty to produce said books and records of account and to allow plaintiff to examine them and make extracts therefrom.

The defendants in their joint answer admit that plaintiff made written demand upon them to examine and to make extracts from the books and records of the Bank and to examine the personal accounts of its officers, directors, and employees, but they deny that plaintiff has stated or alleged any proper purpose for such examination and, therefore, they denied plaintiff's written demand. And further answering plaintiff's petition the defendants allege in substance: Defendants, acting upon the advice of counsel and upon advice of the North Carolina Commissioner of Banks, refused to allow plaintiff to examine the deposit accounts of anyone in the Bank of Rich Square, because such examination would violate the confidential relationship existing between the Bank and its deposi-

tors. Defendants have refused plaintiff's repeated demands to examine the records of loans made by the Bank, because such an examination would violate the confidential relationship existing between the Bank and its borrowers. Defendant Bank always keeps its stockholders' books available to plaintiff and all other stockholders, as directed by G.S. 53-85. R. W. Outland, president and director of the Bank of Rich Square, has informed plaintiff that he could examine the stockholders' books and other corporate records which would not disclose depositors' accounts and individual loan records, and he further informed plaintiff that he might have access to such books and records of the Bank as the North Carolina Banking Commissioner might authorize and direct the Bank to make available to him. Plaintiff has on several occasions examined the Called Reports of Condition of the Bank filed with the North Carolina Banking Commission by the Bank of Rich Square. The Bank of Rich Square is subject to rules, regulations, and instructions promulgated by the North Carolina Commissioner of Banks, pursuant to G.S. 53-104, for the protection of "the interests of the depositories, creditors, stockholders, and public in their relations with" the Bank. Plaintiff has failed to exhaust administrative remedies provided under General Statutes Chapter 53, in that the North Carolina Banking Commission is vested with authority to conduct hearings "upon any matter or thing which may arise in connection with the banking laws of this State * * *." G.S. 53-92. Consequently, plaintiff, having other adequate remedy, is not entitled to a writ of *mandamus.* Plaintiff was formerly employed as cashier of the Bank of Rich Square, but while he was acting as cashier of this Bank and during usual banking hours, he conducted business transactions for himself or members of his family in competition with said Bank, and in 1943 his employment as cashier was terminated by the Bank. All the information requested by plaintiff has been made available to him, except records showing transactions with customers of the Bank. Defendants stand ready and willing to allow plaintiff to examine such books and records of the Bank of Rich Square as he may be entitled to examine under the laws of this State, but they verily believe that to allow plaintiff's capricious, vexatious demand to examine records of depositors and borrowers would damage irreparably the Bank of Rich Square.

On 4 January 1965, Bundy, J., signed an order requiring defendants to appear before him in the Northampton County Superior Court in the courthouse, at 10 a.m. on 18 January 1965, and show cause, if any they could, why a writ of *mandamus* as prayed for by plaintiff in his petition should not be granted.

The show cause order came on to be heard before Bundy, J., at the specified time and place at the 18 January 1965 Session of Northampton County Superior Court, where the parties were present with their counsel. Judge Bundy entered a judgment which contains the following recitals:

"And it appearing to the court that no question of fact is raised by the pleadings herein, to wit, plaintiff's petition and defendants' answer, and it further appearing that neither plaintiff nor defendants have requested or demanded a jury trial; and it being stipulated in open court that the court may make its findings, its conclusions and enter judgment after term and out of the district; and the court having made the following findings and conclusions:"

Judge Bundy made nine findings of fact. His first eight findings of fact are to the effect that the Bank of Rich Square is a domestic corporation, has 500 shares of capital stock outstanding, and that its capital stock is owned by the persons as alleged in the petition and admitted in the answer. Plaintiff is now and has been a shareholder of record in the Bank of Rich Square for at least six months immediately preceding 11 September 1964. That plaintiff by letter dated 11 September 1964, a copy of which is attached to the petition marked Exhibit A, made written demand upon defendants that he be given the right to examine and make extracts from books and records of account of the Bank of Rich Square, and that defendants refused to grant such demand and request. His ninth and last finding of fact is to the effect that plaintiff has instituted no formal proceedings and demanded no hearing before the North Carolina Banking Commission.

Based upon his findings of fact, Judge Bundy made the following conclusions of law:

"a. That plaintiff has failed to exhaust administrative remedies available under North Carolina General Statutes, Chapter 53, before the North Carolina Banking Commission in seeking the relief prayed for and sought by the Petition for Writ of *Mandamus* filed herein;

"b. That plaintiff's written demand, Petitioner's Exhibit A, fails to state a proper purpose for inspection and examination of the books and records of account of defendant corporation; and

"c. That to allow and order defendants to permit such examination and inspection of the books and records of account of

defendant corporation by plaintiff shareholder would be a viola-
tion of the confidential relationship between defendant corpora-
tion and its customers."

Based upon his findings of fact and conclusions of law, Judge
Bundy ordered and decreed that plaintiff's petition for writ of
*mandamus* be denied, that his action be dismissed, and that he be
taxed with the costs.

From the judgment, plaintiff appeals to the Supreme Court.

*Boyce & Lake by Eugene Boyce for plaintiff appellant.*
*J. Buxton Weaver and Martin & Flythe by Perry Martin for de-*
*fendant appellees.*

PARKER, J.  Plaintiff assigns as errors Judge Bundy's three con-
clusions of law and the signing of the judgment.

Plaintiff bases his action in the nature of *mandamus* to enforce his
rights as "a qualified shareholder" in the Bank of Rich Square to
examine the books and records of account of the Bank of Rich
Square upon the provisions of G.S. 55-38(a) and (b). He bases that
part of his action seeking to recover from the individual defendants
$500 as a penalty for their refusing to allow him, pursuant to his
written demand, to make such an examination of the books and
records of account of the Bank of Rich Square, and to recover from
them such other damages to which he may be entitled upon G.S. 55-
38(d).

The allegations in the petition and the admissions in defendants'
answer show that plaintiff is "a qualified shareholder" in the Bank
of Rich Square as the words "a qualified shareholder" are defined in
G.S. 55-38(a).

G.S. 55-38(b) reads as follows:

"(b) A qualified shareholder, upon written demand stating
the purpose thereof, shall have the right, in person, or by at-
torney, accountant or other agent, at any reasonable time or
times, for any proper purpose, to examine at the place where
they are kept and make extracts from, the books and records
of account, minutes and record of shareholders of a domestic
corporation or those of a foreign corporation actually or custo-
marily kept by it within this State. A qualified shareholder in
a parent corporation shall have the aforesaid rights with respect
to the books, records and minutes of a domestic subsidiary corp-
oration or those of a foreign subsidiary corporation actually or
customarily kept by it within this State. A shareholder's rights

under this subsection may be enforced by an action in the nature of *mandamus.*"

G.S. 55-38(d) reads in relevant part:

"(d) Any officer or agent or corporation * * * refusing to allow a qualified shareholder to examine and make extracts from the aforesaid books and records of account, minutes and record of shareholders, for any proper purpose, shall be liable to such shareholder in a penalty of ten per cent (10%) of the value of the shares owned by such shareholder, but not to exceed five hundred dollars ($500.00), in addition to any other damages or remedy afforded him by law, but the court may decrease the amount of such penalty on a finding of mitigating circumstances. It shall be a defense to any action for penalties under this section that the person suing therefor has at any time sold or offered for sale any list of shareholders of such corporation or any other corporation or has aided or abetted any person in procuring any list of shareholders for any such purpose, or has improperly used any information secured through any prior examination of the books and records of account, or minutes, or record of shareholders of such corporation or any other corporation."

The explanatory comment accompanying Senate Bill 49 which was introduced in the 1955 Session of the General Assembly, and which became the Business Corporation Act, G.S. Chapter 55, has this comment under G.S. 55-38: "PURPOSE: To define with some definiteness the rights of inspection of shareholders and to impose some safeguards against fishing expeditions, especially by recent transferees." Section 55-38 of this bill and G.S. 55-38 are identical, except that G.S. 55-38 contains subsection (e), which, of course, caused the following subsections of G.S. 55-38 to bear different letters, *e.g.*, subsection (e) of the bill is subsection (f) of G.S. 55-38.

Chapter 609, 1965 Session Laws of North Carolina, is entitled, "An Act to prevent unreasonable disclosure of bank customer records." It reads in relevant part:

"*The General Assembly of North Carolina do enact:*

"Section 1. G.S. 55-38 is amended by adding at the end thereof a new subsection to be designated subsection (i), reading as follows:

"'(i) Provided that nothing in this Section shall be construed to authorize a shareholder of a banking corporation to examine the deposit records or loan records of a bank customer, except

upon order of a court of competent jurisdiction for good cause shown.'

"Sec. 2. Nothing in this Act shall affect pending litigation."

The present action was commenced by the issuance of summons on 31 December 1964. Therefore, the 1965 amendment to G.S. 55-38 does not apply to the litigation here, but it is pertinent as showing that the General Assembly considered the provisions of G.S. 55-38 applicable to banking corporations.

C.S. 1146 (afterwards former G.S. 55-50) provided for the appointment of an auditor upon a refusal by a private corporation to commence an audit within 30 days after a request by the required number of shareholders. This statute was construed and applied in *Cole v. Trust Co.*, 221 N.C. 249, 20 S.E. 2d 54. In this case defendant contended C.S. 1146 does not apply to banks. After stating that this contention could not be sustained, the Court said:

"* * * It [C.S. 1146] embraces all domestic corporations organized for profit in which the beneficial interests and pro rata ownership are represented by shares of stock, and is applicable as well to banks and trust companies organized under the laws of North Carolina as to other business or industrial corporations. *Rhodes v. Love*, 153 N.C. 468 (472), 69 S.E. 436. By sec. 87, ch. 4, Public Laws 1921 (Michie's Code, 224 [j]), it is provided that the laws relating to private corporations are applicable to banks, unless inconsistent with the business of banking."

G.S. 53-135 reads:

"All provisions of the law relating to private corporations, and particularly those enumerated in the chapter entitled 'Corporations,' not inconsistent with this chapter or with the business of banking, shall be applicable to banks."

According to the admitted facts in the pleadings, the Bank of Rich Square is a "corporation" within the intent and definition of "corporation" set forth in G.S. 55-2, in that it is a corporation for profit and having a capital stock which has been created by a special act of the General Assembly of this State. In addition, domestic banks must have by express statutory provision, G.S. 53-6, capital stock. G.S. 55-3 reads in relevant part: "(a) The provisions of this chapter shall apply to every corporation for profit, * * * unless the corporation is expressly excepted from the operation hereof or unless there is other specific statutory provision particularly applicable to

the corporation or inconsistent with some provisions of this chapter, in which case that other provision prevails." Domestic banking corporations are not expressly excepted from the operation of our Business Corporation Act, and we know of no "specific statutory provision particularly applicable" to domestic banks operating in North Carolina or inconsistent with some provisions of our Business Corporation Act, so as to make such provision prevail, nor has any such specific statutory provision been called to our attention. In *White v. Smith,* 256 N.C. 218, 123 S.E. 2d 628, we held that the provisions of our Business Corporation Act, G.S. 55-37(a) (3), concerning shareholders' lists, and G.S. 55-64, concerning voting lists, are applicable to savings and loan associations, and *mandamus* is expressly authorized by G.S. 55-37(b) to compel compliance. It is our opinion, and we so hold, the provisions of our Business Corporation Act are applicable to domestic banks operating in North Carolina.

A shareholder of a banking corporation, like a shareholder of any other private corporation, has, in the absence of statutory restriction, a common law right to inspect and examine the books and records of the banking corporation at a proper time and place and for a proper purpose, and his right of inspection and examination is generally enforceable by *mandamus* proceedings against the banking corporation and its officers or agents having charge of the books and records sought to be reached. This right of inspection and examination rests upon the proposition that those in charge of the banking corporation are merely the agents of the stockholders, who are the real and beneficial owners of the property, the legal title to which is held by the banking corporation, and it has sometimes been said that a shareholder's assertion of right to inspect and examine a corporation's books and records is one merely for the inspection and examination of what is his own. Since the common law right of inspection and examination grows out of the shareholder's relationship to the corporation, and is given to him for the protection of his interests, it is generally recognized that the common law right is qualified by requiring that it be exercised in good faith for purposes germane to his status as a shareholder, and it seems that a proper demand or notice is a prerequisite to the exercise of such right. *White v. Smith, supra; Guthrie v. Harkness,* 199 U.S. 148, 50 L. Ed. 130; *State v. Crookston Trust Co.,* 222 Minn. 17, 22 N.W. 2d 911; 9 C.J.S., Banks and Banking, § 69; 10 Am. Jur. 2d, Banks, § 68; Annot. 15 A.L.R. 2d 11, §§ 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 18, 19; 5 Fletcher, Cyclopedia Corporations, Per. Ed. §§ 2213, 2214; Robinson, N. C. Corporation Law and Practice (1964), § 58. The annotation in 15 A.L.R. 2d covers over 82 pages, and is a very thorough discussion

of the "Purposes for which stockholder or officer may exercise right to examine corporate books and records" of a private corporation, and contains citations of a legion of cases from most, if not all, of the states of this nation.

In Fletcher, *ibid*, § 2214, it is said: "Even at common law the writ of *mandamus* would not issue as a matter of course to enforce the mere naked right or to gratify mere idle curiosity, but it was necessary for petitioner to show some specific interest at stake rendering the inspection necessary, or some beneficial purpose for which the examination is desired."

Plaintiff, "a qualified shareholder," as defined in G.S. 55-38(a), in the Bank of Rich Square, a domestic banking corporation, is granted by G.S. 55-38(b) of our Business Corporation Act—the 1965 amendment to G.S. 55-38 not being applicable to this litigation—a right, upon written demand stating the purpose thereof, in person, or by attorney, accountant or other agent, at any reasonable time or times, *for any proper purpose*, to examine at the place where they are kept and make extracts from, the books and records of account, minutes and record of shareholders of the Bank of Rich Square.

Considering the huge size of many modern corporations and the necessarily complicated nature of their bookkeeping, it is plain that to permit their thousands of stockholders to roam at will through their records would render impossible not only any attempt to keep their records efficiently, but the proper carrying on of their businesses. Recognizing such fact, G.S. 55-38(b), as applicable in this case, gives plaintiff a right of inspection and examination "for any proper purpose." It does not give him an absolute right of inspection and examination for a mere fishing expedition, or for a purpose not germane to the protection of his economic interest as a shareholder in the corporation.

In 2 Model Business Corporation Act, Annotated, p. 127, it is said: "In regulating the shareholders' inspection rights, the legislatures have avoided specific definitions of proper purpose, leaving to the courts the job of balancing the interests involved, primarily on the basis of common law."

Plaintiff alleges in effect that he desires to examine the books and records of the Bank of Rich Square for the purpose of ascertaining the true financial condition of the Bank, the present and potential value of his stock in the Bank, the efficiency of its management, and the probability and extent of assessment liability of the stock which he owns. This is said in Annot. 15 A.L.R. 2d 11, § 8, p. 42: "One of the reasons most commonly alleged by stockholders seeking to inspect the corporation's books and records is a desire to de-

termine the value of their stock in the corporation, and, where the stockholder is proceeding in good faith, it appears that an inspection will readily be granted for this purpose." In support of the text, authorities are cited from many jurisdictions. This is said in Annot. 15 A.L.R. 2d, 11, § 7, p. 30: "Since the stockholders are, in a sense, the beneficial owners of the corporate assets, and thus the persons primarily interested in seeing that the concern is efficiently and profitably managed, it has generally been held that they are entitled to inspect the books and records in order to investigate the conduct of the management, determine the financial condition of the corporation, and generally take an account of the stewardship of the officers and directors, at least where there are circumstances justifying some suspicion of mismanagement." Voluminous authority is cited to support the text.

In *White v. Smith, supra,* the Court said: "At common law stockholders in private corporations have the right to make reasonable inspection of a corporation's books to assure themselves of efficient management."

*Guthrie v. Harkness, supra,* was a case in which the Supreme Court of the United States reviewed a judgment of the Supreme Court of the State of Utah, which affirmed a judgment of a trial court in that State, awarding a writ of *mandamus* to compel the directors of a national bank to permit a stockholder to inspect the books at such times as would not interfere with the business of the bank. The Supreme Court of the United States affirmed the decision of the Supreme Court of the State of Utah. In its opinion the Court said:

"In *State ex rel. Doyle v. Laughlin,* 53 Mo. App. 542, a stockholder in an incorporated bank had been denied by the directors the right to inspect the books for the purpose of acquainting himself with the conduct of its affairs and to learn how it was managed. The court there held that he was entitled to a writ of *mandamus* to compel the inspection, and this notwithstanding the bank contended that it occupied such a confidential and trust relation to its customers and depositors that it would be a breach of duty on its part to open up the books to the inspection of the relator. The authorities are fully examined, and the right of the shareholders to inspect the books for proper purposes and at proper times is recognized, in *Re Steinway,* 159 N.Y. 251, 45 L.R.A. 461 53 N.E. 1103; *Com. ex. rel Sellers v. Phoenix Iron Co.,* 105 Pa. 111, 51 Am. Rep. 184. To the same effect are *Deaderick v. Wilson,* 8 Baxt. 108-137; *Lewis v. Brain-*

*erd*, 53 Vt. 520; and *Huylar v. Cragin Cattle Co.*, 40 N.J. Eq. 392-398, 2 Atl. 274.

\*     \*     \*

"It is suggested in argument that, if the shareholder has this right, it may be abused, in that he may make an improper use of the knowledge thus gained. \* \* \* In the case before us no reason is shown for denying to the stockholder the right to know how his agents are conducting the affairs of a concern of which he is part owner. Many legal rights may be the subjects of abuse, but cannot be denied for that reason. A director, who has the right to an examination of the books, may abuse the confidence reposed in him. Certainly this possibility will not be held to justify a denial of legal right, if such right exists in the shareholder. The possibility of the abuse of a legal right affords no ground for its denial. *State ex rel. Doyle v. Laughlin*, 53 Mo. App. 542; *People ex rel. Gunst v. Goldstein*, 37 App. Div. 550, 56 N.Y. Supp. 306. The text-books are to the same effect as the decided cases. Cook, Stocks & Stockholders, § 511; Boone, Banking, § 235; Angell & A. Priv. Corp. 607.

"It does not follow that the courts will compel the inspection of the bank's books under all circumstances. In issuing the writ of *mandamus* the court will exercise a sound discretion, and grant the right under proper safeguards to protect the interests of all concerned. The writ should not be granted for speculative purposes, or to gratify idle curiosity, or to aid a blackmailer, but it may not be denied to the stockholder who seeks the information for legitimate purposes. *Re Steinway*, 159 N.Y. 250, 45 L.R.A. 461, 53 N.E. 1103; Thomp. Corp. §§ 4412 *et seq.*"

In 5 Fletcher, Cyclopedia Corporations, Per. Ed., § 2253.1, it is said: "Although there is respectable authority to the contrary, the majority common-law rule seems to be that the burden of proving that stockholders, who have made a demand for an inspection of the books of corporation and have been refused, were acting from improper motives rests upon the defendant."

The State of Oregon has a statute very similar to G.S. 55-38 before the 1965 amendment thereto. In *Rosentool v. Bonanza Oil and Mine Corp.*, 221 Ore. 520, 352 P. 2d 138, the Court held that where shareholder, who has either owned stock for six months prior to demand or who is the holder of at least five per cent of the outstanding stock, seeks by *mandamus* to compel the corporation to permit inspection, if petition shows on its face that the requested inspection is for a proper purpose, the demand should be granted unless the

corporation alleges defensive facts tending to establish bad faith or the fact that inspection is not sought for a proper purpose, and the burden of establishing such bad faith or improper purpose rests upon the corporation. In its opinion, after discussing a number of cases from other jurisdictions supporting its view, the Supreme Court of Oregon said:

> "Until an examination of the corporate records is obtained, the shareholder often can do nothing more than entertain a belief of mismanagement, and, in the absence of express legislative command, to place the burden of proof upon the shareholder in a situation such as that now under review would in many cases defeat the very grounds upon which a right of inspection of corporate records is said to exist. * * *
>
> "Where the request of a shareholder for an inspection of corporate records indicates on its face that it is for a proper purpose, that is, for a lawful and reasonable purpose germane to his status as a shareholder, the burden shifts to the defendant to show that the inspection should not be granted because it tends to advance a purpose inimical or hostile to the corporation or the other shareholders, or that the purpose of the shareholder is to gratify his curiosity or harass or annoy the corporation or its management, or is to advance a speculative or some other improper purpose of the shareholder."

There is a comment on this case in Robinson, N. C. Corporation Law and Practice, p. 169.

In *Goldman v. Trans-United Industries, Inc.,* 404 Pa. 288, 171 A. 2d 788, the Court said:

> "The common law right of a shareholder to inspect the books of a corporation is not an absolute right—it rests on conditions of propriety and reasonableness as to time, place and purpose. The Business Corporation Law of May 5, 1933, P.L. 364, § 308(B), 15 P.S. § 2852-308(B), which is based on the Model Business Corporation Act, § 35 (9 U.L.A.), is merely a codification of the common law rule. The requested relief will not be granted where the purpose is proven to be improper or unreasonable, but the burden of so proving is on the corporation."

*Hausner v. Hopewell Products, Inc.,* 10 A.D. 2d 876, 201 N.Y.S. 2d 252, was proceedings on application for directive permitting petitioner to inspect and make copies of books, papers, and records of a corporation. In its opinion the Court said: "Petitioner is not required

to sustain the burden of proving his good faith. On the contrary, appellants have the burden of proving the bad faith on his part which they allege in their answer."

In *William Coale Development Co. v. Kennedy,* 121 Ohio St. 582, 170 N.E. 434, the Court said:

> "When the stockholder is asking the right to inspect the corporate books, records, papers, and documents, or the corporate property, such request is attended by a presumption of good faith and honesty of purpose until the contrary is made to appear by evidence produced by the officers or agents who are seeking to defeat such inspection. The burden of proof on this question should not be borne by the stockholder, but should be borne by the agents or officers objecting to the inspection."

The written demand and petition of plaintiff for an examination of the books and records of account of the Bank of Rich Square, pursuant to the provisions of G.S. 55-38(b)—the 1965 amendment to G.S. 55-38 is not applicable to this litigation—indicate on their face that it is for the purpose of determining the value of his stock in the Bank of Rich Square, and of investigating the conduct of its management to determine the Bank of Rich Square's financial condition, and whether it is efficiently managed, a proper purpose germane to his status as a shareholder in the Bank, with the exception that it would seem on the face of the written demand and petition that an examination of the records of the amounts on deposit in the names of the officers, directors, and employees of the Bank is not germane to plaintiff's status as a shareholder. Upon such a showing, in our opinion, and we so hold, the burden of proof then rests upon the defendants, if they desire to defeat his demand, to allege and show by facts, if they can, not merely by a denial that his demand is not for a proper purpose, that the examination should not be granted because it is not made in good faith, and would tend to advance a purpose inimical or hostile to the corporation or the other stockholders, or that the purpose of plaintiff is to gratify his curiosity, or primarily to vex, harass or annoy the corporation or its management, or is to advance a speculative purpose, or some other improper purpose of plaintiff.

It is to be clearly understood that we are not here concerned with G.S. 55-38(f), which reads in part: "Notwithstanding the foregoing provisions of this section, *upon proof of proper purpose by a shareholder of a domestic or foreign corporation * * *."* (Emphasis supplied.) What we have said as to burden of proof in respect to G.S.

55-38(b) is not to be taken or considered in respect to burden of proof as to G.S. 55-38(f). See *Rosentool v. Bonanza Oil and Mine Corp., supra;* Robinson, N. C. Corporation Law and Practice, p. 169.

The trial judge erroneously concluded as a matter of law "that plaintiff's written demand, Petitioner's Exhibit A, fails to state a proper purpose for inspection and examination of the books and records of account of defendant corporation," and plaintiff's assignment of error thereto is sustained.

Plaintiff's assignment of error to the trial judge's third conclusion of law is sustained, for the reason that if plaintiff, "a qualified shareholder" in the Bank of Rich Square, is entitled to a writ of *mandamus* to compel an examination of the books and records of account of the Bank, the writ of *mandamus* cannot be denied because the Bank contends it would be a violation of the confidential relationship between the Bank and its customers to permit such an examination. *Guthrie v. Harkness, supra; State v. Crookston Trust Co., supra; State ex rel. Doyle v. Laughlin,* 53 Mo. App. 542; Annot: Ann. Cas. 1916C, 703.

Plaintiff's assignment of error to the trial judge's first conclusion of law, "That plaintiff has failed to exhaust administrative remedies available under North Carolina General Statutes, Chapter 53, before the North Carolina Banking Commission in seeking the relief prayed for and sought by the Petition for Writ of *Mandamus* filed herein," is sustained. This erroneous conclusion of law is evidently based upon paragraph "f" of defendant's further answer reading as follows: "The plaintiff has failed to exhaust administrative remedies provided under Chapter 53 of the North Carolina General Statutes, in that the North Carolina Banking Commission is vested with authority to conduct hearings 'upon any matter or thing which may arise in connection with the banking laws of this State. . . .' N. C. Gen. Stat. Section 53-92; therefore, plaintiff, having other adequate remedy, is not entitled to a WRIT OF MANDAMUS." The statutory powers vested by G.S. Chapter 53 in the State Banking Commission and the Commissioner of Banks do not affect or curtail or prevent plaintiff's rights as "a qualified shareholder" in the Bank of Rich Square to demand an examination of the books and records of account of the Bank of Rich Square under the provisions of G.S. 55-38(a) and (b), and such statutory powers vested in the State Banking Commission and the Commissioner of Banks are no reason for denying plaintiff's right of examination, if he is entitled thereto. *State v. Crookston Trust Co., supra.*

Plaintiff's assignment of error to the judgment is sustained.

LEGGETTE *v.* McCOTTER.

The judgment below is reversed, and the cause is remanded to the Superior Court of Northampton County for further proceedings in accordance with the applicable law set forth in this opinion.

Reversed and remanded.

LAKE, J., took no part in the consideration or decision of this case.