NORTH CAROLINA       IN THE GENERAL COURT OF JUSTICE

FORSYTH COUNTY      SUPERIOR COURT DIVISION
               01CVS005106

- - - - - - - - - - - - - - - - - - - - - - -

THEODORE J. HOEPNER,
       Plaintiff,

  v.             ORDER and OPINION

WACHOVIA CORPORATION,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - -

{1}  THIS MATTER is before the Court on Plaintiff Theodore J. Hoepner's motion for summary judgment. The motion raises the issue of whether a shareholder qualified under N.C.G.S. § 55-16-02 to inspect the shareholder records of a corporation may share the information with another contestant in a proxy fight who is not a qualified shareholder. For the reasons stated below, the motion for summary judgment is granted, and Wachovia Corporation is ordered to permit inspection of the requested records without limiting Mr. Hoepner's right to share that information with other contestants in the proxy fight.

*Ellis & Winters, L.L.P., by Richard W. Ellis, Paul K. Sun, Jr., Mary M. Dillon and Thomas D. Blue, Jr; Skadden, Arps, Slate, Meagher & Flom, LLP, by Jay B. Kasner; for plaintiff.*

*Bell, Davis & Pitt, P.A., by William K. Davis and Troy D. Cahill; Brooks, Pierce, McLendon, Humphrey & Leonard, by James T. Williams, Jr. and Mack Sperling; for defendant.*

## I.

{2}  On April 16, 2001, Wachovia Corporation ("Wachovia") and First Union Corporation ("First Union") announced that they had entered into a merger agreement, ("the First Union Merger Agreement") which will be submitted to the shareholders of Wachovia for approval at a shareholders meeting scheduled for August 3, 2001.  Shareholders of record as of June 12, 200l will be entitled to vote on the proposed merger at that meeting.

{3}  On May 14, 2001, SunTrust Banks, Inc. ("SunTrust") made an unsolicited proposal for a merger between Wachovia and SunTrust.

{4}  On May 15, 2001, Mr. Hoepner, vice chairman of SunTrust and an owner of 280 shares of Wachovia common stock, submitted a letter to Wachovia demanding the right, pursuant to N.C.G.S. § 55-16-02 and the common law of North Carolina, to inspect and copy certain records and documents of Wachovia, namely a record of shareholders.  His stated purpose for the demand was

> to enable [Mr. Hoepner] and SunTrust to communicate with other [Wachovia] stockholders with respect to matters relating to our mutual interests as stockholders of [Wachovia], including but not limited to the Solicitation.  Solely in connection with the foregoing purposes, [Mr. Hoepner] intends to share the information requested above with SunTrust.

The solicitation referred to in Mr. Hoepner's letter is a proxy solicitation in opposition to Wachovia's solicitation of proxies from its shareholders to vote in favor of the First Union Merger Agreement.

{5}  On May 22, 200l, the Board of Directors of Wachovia rejected the SunTrust proposal.

{6}     On May 23, 2001, Wachovia refused Mr. Hoepner's request based on Mr. Hoepner's assertion that he intended to share the information with SunTrust, which, unlike Mr. Hoepner, had not established its status as a qualified shareholder. Wachovia does not question Mr. Hoepner's status as a qualified shareholder except for his stated intention to share the shareholder list with SunTrust. Wachovia contends that intention to share the information in a proxy fight disqualifies Mr. Hoepner because his demand is not made in good faith and for a proper purpose as required by N.C.G.S. § 55-16-02 (c)(1).

{7}     Wachovia also asserts that Mr. Hoepner's demand letter does not comport with parts of the statutory requirements.

{8}     This case was assigned to the North Carolina Business Court on June 5, 2001. Mr. Hoepner filed his motion for summary judgment on June 5, 2001, and Wachovia responded on June 12, 2001. Oral argument was held on June 14, 2001.

## II.

{9}     Pursuant to Rule 56(c) of the North Carolina Rules of Civil Procedure, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. *See* N.C. R. Civ. P. 56(c); *see also Beam v. Kerlee*, 120 N.C. App. 203, 209, 461 S.E.2d 911, 916 (1995) (recognizing that summary judgment is appropriate only when "there is no dispute as to any material fact"). As moving parties, defendants have "the burden of showing there is no triable issue of material fact." *Farrelly v. Hamilton Square*, 119 N.C. App. 541, 543, 459 S.E.2d 23, 25-26; *see also Taylor v. Ashburn*, 112 N.C. App. 604, 606, 436 S.E.2d 276, 278 (1993). In determining whether that burden has been met, the court "must view all the evidence in the light most favorable to the non-moving party, accepting all its asserted facts as true, and drawing all reasonable inferences in its favor." *Lilley v. Blue Ridge Elec. Membership Corp.*, 133 N.C. App. 256, 258, 515 S.E.2d 483, 485 (1999); *see also Murray v. Nationwide Mut. Ins. Co.,* 123 N.C. App. 1, 472 S.E.2d 358, 362 (1996). Summary judgment is proper where only questions of law exist. *Baugh v. Woodard*, 56 N.C. App. 180, 183, 287 S.E.2d 412, 413 (1982).

## III.

{10}    A qualified shareholder has a statutory right to inspect and copy a "record of shareholders." N.C.G.S. § 55-16-02(b)(3) (2000); *see also Parsons v. Jefferson Pilot Corp.,* 333 N.C. 420, 426 S.E.2d 685, 689 (1993). Concurrent rights exist at common law. *See id.* ("[S]hareholders of a corporation have a common law right to make a reasonable inspection of its books to assure themselves of efficient management.")*; White v. Smith,* 256 N.C. 218, 123 S.E.2d 628 (1962) (common law right to inspection expanded by statute); N.C.G.S. § 55-16-02 official cmt. 4 (2000). Mr. Hoepner is admittedly a qualified shareholder under the statute and entitled to the shareholder list. Therefore, the primary question before the Court is whether Wachovia can prevent Mr. Hoepner from sharing the shareholder list with SunTrust, an unqualified shareholder, for use in the proxy fight between Wachovia and SunTrust. The issue is one of first impression in North Carolina.

{11}    Both the statutory scheme embodied in the North Carolina Business Corporation Act and the case law in North Carolina evidence a strong public policy of insuring fairness and equality between a corporation and its shareholders in a proxy solicitation. In *Parsons*, the North Carolina Supreme Court stated:

> We believe that the legislative intent embodied in N.C.G.S. § 55-16-02(b)(3) is that shareholders be entitled to the information concerning the identity of shareholders which is possessed by the corporation in order that they may have the same opportunity as the corporation to communicate with the other shareholders.

*Parsons v. Jefferson Pilot Corp.,* 333 N.C. 420, 428 S.E.2d 685, 690 (1993). *See also* N.C.G.S. § 53-85

(permitting shareholder access to bank's records); *White v. Smith*, 256 N.C. 218, 123 S.E.2d 628 (1962) ("[S]tockholders have a right to know the names of their associates for the purposes of conducting an effective campaign in preparation for a stockholder meeting.").

{12}     In its analysis the *Parsons* court cited *Sadler v. NCR Corp.*, 928 F.2d 48 (2nd Cir. 1991) and *Cenergy Corp v. Bryson Oil & Gas P.L.C.,* 662 F. Supp 114 (D. Nev. 1987) with approval.  The *Cenergy* case was cited with approval in *Parsons* for the "view that requiring a corporation to divulge all of the shareholder information *in its possession* would completely effectuate the goal of fairness and equality between a corporation and its shareholders in proxy solicitation."  *Parsons v. Jefferson Pilot Corp.,* 333 N.C. 420, 428 S.E.2d 685, 690 (1993).  It is thus clear under North Carolina law that obtaining a shareholder list for the purposes of contacting the shareholders is a proper purpose.

{13}     In *Sadler,* the United States Court of Appeals for the Second Circuit directly addressed the issue of whether a qualifying shareholder could demand a shareholder list on behalf of a corporation involved in a proxy fight with the defendant.  *Sadler v. NCR Corp.*, 928 F.2d 48 (2nd Cir. 1991).  In that case, AT&T, the unwelcome bidder, purposely engaged the Sadlers, the qualified shareholders, to make a demand on NCR, the target corporation, for the list of shareholders.  *Id.*  The purpose of obtaining the list was so that AT&T could solicit the shareholders in its proxy fight.  *Id.*  AT&T agreed to indemnify the Sadlers for any costs associated with the demand requirements and production of documents.  *Id.* at 49.  NCR refused to provide the lists because of the agreement between AT&T and the Sadlers and because of AT&T's lack of qualified shareholder status.  *Id.* at 50.  The Court of Appeals agreed with the lower court's statement that the Sadlers had a personal interest in seeing the tender offer succeed other than as nominees of AT&T and were therefore requesting the list for a proper purpose.  *Id.* at 51.  Thus, the Court of Appeals stated that "the demanding stockholder is entitled to turn the list over to others involved in a proxy contest" absent any allegation of improper purpose or bad faith.  *Id.* at 52 (citing *In re Lopez,* 420 N.Y.S.2d 225 (1979).

{14}     Courts in other jurisdictions have reached the same conclusion, holding that the shareholder is entitled to turn the list over to others involved in a proxy fight.  *See, e.g., Davey v. Unitil Corp.,* 585 A.2d 858, 861-63 (N.H. 1991) (ordering production to stockholder intending to give list to hostile offeror); *DeRosa v. Terry Steam Turbine Co*., 214 A.2d 684, 688-89 (Conn. Sup. Ct. 1965) (ordering production of list to shareholder who intended to turn list over to third party); *Trans World Airlines, Inc. v. State,* 183 A.2d 174, 175-76 (Del. 1962) (holding that stockholder's agent's desire to defeat corporate claim against his principal was irrelevant to his right to list); *Hanrahan v. Puget Sound Power & Light Co., 126* N.E.2d 499, 591-92 (Mass. 1955) (ordering production of list to shareholders intending to provide list to others for a proxy fight).

{15}     In its response to summary judgment, Wachovia claims that the requirement of good faith precludes Mr. Hoepner from providing the shareholder lists to SunTrust.  Wachovia's position is contrary to public policy.  Given the strong policy arguments for providing shareholders an equal opportunity to communicate with other shareholders of the corporation, it would be improvident to impose upon the qualifying shareholder the burden of contacting the other shareholders on his own or with only the assistance of other qualifying shareholders.  Such a burden would act as a significant barrier to a shareholder's ability to protect his interests and would fail to "completely effectuate the goal of fairness and equality between a corporation and its shareholders in [a] proxy solicitation."  *Parsons v. Jefferson Pilot Corp.,* 333 N.C. 420, 428 S.E.2d 685, 690 (1993).

{16}     It should also be noted that section 55-16-03 specifically states that a shareholder's agent "has the same inspection rights as the shareholder he represents."  N.C.G.S. § 55-16-03(a).  Pointedly, section 55-16-03 does not limit the persons or entities that the shareholder may designate as agent nor does it state that the agent must also be a qualifying shareholder.  In this regard the Court again finds *Sadler* instructive.  In *Sadler*, the Sadlers described AT&T as their agent.  "NCR contended that AT&T [was] not the agent of the Sadlers, but in reality [was] the principal, using the Sadlers as its agent for a demand that AT&T itself [was] not entitled to make."  *Sadler v. NCR Corp.*, 928 F.2d 48, 51 (2nd Cir. 1991).  The

*Sadler* court stated that "though the statute permits an 'agent' to act for the qualifying [shareholder] in inspecting the shareholder record, it does not inevitably apply all the technical aspects of the law of agency to the permissible relationship between the requesting shareholder and the entity with whom the shareholder chooses" to affiliate. *Sadler v. NCR Corp.*, 928 F.2d 48, 51 (2nd Cir. 1991). Although it is not specifically claimed in the case at bar that SunTrust is acting as agent for Mr. Hoepner, the practical result of the permissible use of agents and the strong public policy favoring equal access to information indicates that sharing the lists with other interested parties for the purpose of a proxy fight is neither improper nor bad faith.

{17} The procedural defects in Mr. Hoepner's request asserted by Wachovia are without merit. The fact that Mr. Hoepner did not specify the date upon which he wished to inspect or copy the materials is not a fatal defect. The demand letter requested inspection and copying after May 23, 2001. The statute provides that he must give at least five days' notice, and he did not demand inspection and copying in less than five days. N.C.G.S. § 55-16-02(a). He could therefore specify a date at a later time. Since Wachovia declined to produce the records on May 23, 2001, absent Mr. Hoepner's agreement to Wachovia's proposed restrictions, he was not in a position to specify a date. His request to copy the documents without specifying that he wanted to inspect the documents first was not a defect warranting Wachovia's failure to comply with the statute. Mr. Hoepner sufficiently requests the right to inspect and copy pursuant to the statute.

{18} North Carolina General Statutes sections 55-16-02 and 55-7-20 are independent provisions. A shareholder may obtain the information specified under N.C.G.S. § 55-16-02 without regard to the existence of an upcoming shareholders meeting. Once a meeting is noticed, the shareholders' rights under N.C.G.S. § 55-7-20 also become effective, but are subject to the "good faith" and "proper purpose" limitations in N.C.G.S. § 55-16-02(c). Wachovia contends that N.C.G.S. § 55-16-02 does not impose upon it a continuing obligation to provide Mr. Hoepner with transfer sheets as those sheets come into Wachovia's possession. As previously indicated, there is a strong public policy favoring equal access to communication with shareholders. Although Wachovia is not required to create new documents to satisfy Mr. Hoepner's demands, inasmuch as holders of Wachovia shares change daily and Wachovia has constant access to that information, the Court believes that Mr. Hoepner is also entitled to daily transfer sheets pursuant to his request. Neither the statute nor does this Court require Wachovia to create or obtain any information it does not already possess. To the extent it has or obtains the records requested, it must provide those records to Mr. Hoepner to maintain the level playing field contemplated by the statute.

{19} Mr. Hoepner's intention to share the list with SunTrust is neither an improper purpose, nor a violation of good faith, nor does it justify Wachovia's refusal to produce the lists. Mr. Hoepner has an interest independent of that of SunTrust and has met the qualifications under N.C.G.S. § 55-16-02. Thus, Plaintiff's motion for summary judgment is granted.

{20} Additionally, the Court grants Mr. Hoepner's request pursuant to N.C.G.S. § 55-16-04 that Wachovia bear the costs for the production of documents demanded, but denies other costs incurred by Plaintiff in pursuit of this litigation. The principal question raised by Wachovia, i.e., Mr. Hoepner's right to share the information with others for use in a proxy fight, was undecided under North Carolina law. In the future, a corporation withholding compliance with its statutory duties on the basis that the shareholder intended to share the information with others in a proxy solicitation would be subject to the imposition of costs as provided by the statute.

{21} It is thereby ADJUDGED, ORDERED AND DECREED that:

1. Wachovia Corporation will provide, at its own expense, the documents demanded by Mr. Hoepner pursuant to N.C.G.S. §§ 55-16-02 to the extent Wachovia maintains or possesses such records. The records to be produced include:

(a)     A complete record or list of [Wachovia's] stockholders, certified by its transfer

agent(s) and/or registrar(s), showing the name and address of each stockholder and the number of shares registered in the name of each such stockholder as of the most recent date available and as of any record date (any such record date is referred to as a "Record Date") that may be set for the determination of stockholders entitled to notice of and to vote at any meeting of stockholders of [Wachovia] (the "Stockholders' Meeting") at which a proposal to approve and adopt the [First Union Merger Proposal] will be considered;

(b)        A magnetic computer tape list of [Wachovia's] stockholders showing the name and address of each stockholder and number of shares registered in the name of each such stockholder as of the most recent date available and as of any Record Date, such computer processing data as is necessary for the undersigned to make use of such magnetic computer tape, and a printout of such magnetic computer tape for verification purposes;

(c)        A list of all holders of shares of Common Stock as of the most recent date available and as of any Record Date, arranged in descending order by number of shares and indicating the names and addresses of all of [Wachovia's] stockholders;

(d)        All daily transfer sheets showing changes in the lists of [Wachovia's] stockholders referred to in paragraph (a) above which are in or come into the possession of [Wachovia] or its transfer agent from the date of such lists to the date of the Stockholders' Meeting;

(e)        All information in or which comes into [Wachovia's] possession or control concerning the number and identity of, and the number of shares held by, the actual beneficial owners of [Wachovia's] stock, including (1) a breakdown as of any Record Date and omnibus proxies as of any Record Date and as of the most recent date available of any holders in the name of Cede & Co. and other similar nominees; (2) all "Weekly Security Position Listing Daily Closing Balances" reports issued by DTC (and authorization for Innisfree M&A Incorporated, as agent of the undersigned, to receive such reports directly); and (3) all lists (and computer tapes, processing data and printouts as described in (b) above) containing the name, address and number of shares of Common Stock attributable to any participant in any employee stock ownership plan, employee stock purchase plan, dividend reinvestment plan or other employee compensation or benefit plan of [Wachovia] in which the decision whether to vote shares of Common Stock held by such plan is made, directly or indirectly, individually or collectively, by the participants in the plan and the method(s) by which the undersigned or agents of the undersigned may communicate with each such participant;

(f)        All information in or which comes into [Wachovia's] possession or control relating to the names and addresses of, and the number of shares held by, the beneficial owners of [Wachovia's] stock, including, but not limited to, any list of non-objecting or consenting beneficial owners ("NOBO's" or "COBO's"), in the format of a printout and magnetic computer tape listing in descending order balance;

(g)        A stop list or stop lists relating to any shares of Common Stock as of the dates of the lists referred to in paragraph (a) above;

(h)        A correct and complete copy of the Bylaws of [Wachovia], as amended to date, and any and all changes of any sort to the Bylaws of [Wachovia] hereafter made through the date of the Stockholder's Meeting,  including, without limitation, any amendment to existing Bylaws, any adoption of new Bylaws or deletions of existing Bylaws; and

2.   All respondent bank's lists and omnibus proxies for such lists pursuant to Rule 14b-2 of the Exchange Act.

Wachovia will comply with this Order by 5:00 p.m. on June 20, 2001.

So **ORDERED t**his the 14th day of June 2001.

 

_____
Ben F. Tennille
Special Superior Court Judge for Complex Business Cases