R. D. MORGAN, JR. v. JOE McLEOD, HOOPER HALL, GRAHAM A. BELL, BETTY-ROSE, INC., AND BELMOR CORPORATION

No. 7812SC450

(Filed 3 April 1979)

1. **Corporations § 5.1— financial statement—absolute right of stockholder—examination of corporation's records—proper purpose required**

   In an action by a minority shareholder seeking a writ of mandamus to compel respondents to deliver to him true financial statements of the assets and liabilities of each corporation, the results of the operations and changes in surplus for each corporation for the last year and to allow him to examine and make copies of the records of accounts and other records of each corporation, the trial court properly found that petitioner, as a matter of absolute right pursuant to G.S. 55-37, was entitled to be furnished true financial statements of the corporations, but a jury question arose as to whether petitioner, pursuant to G.S. 55-38, wished to examine the records of the corporation for a

"proper purpose," and respondents' contention that the qualifying language of G.S. 55-38, *i.e.*, that the requested information be for a "proper purpose," was also applicable to G.S. 55-37 was without merit.

**2. Corporations § 5.1— denial of stockholder's absolute right—assessment of penalty—determination of value of shares**

In order for the trial court to determine the value of the shares owned by petitioner in a corporation for the purpose of assessing penalties pursuant to G.S. 55-38(d), the court must consider all material factors and elements which counsel bring to the court and not depend upon any one formula exclusively; the court in this action had adequate evidence before it to support its determination of the value of petitioner's stock where such evidence included the retained earnings of the corporation, the willingness of an optionee to pay $61,000 for the corporation's stock, the investments in the corporation by petitioner and one of the respondents, the sale shortly after petitioner requested financial information of some assets for $600,000, and various references in the evidence to real and personal properties owned by the corporation.

APPEAL by respondents from *Clark, Judge.* Order entered 9 November 1977, in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 27 February 1979.

The petitioner, a minority shareholder in both respondent corporations, filed a petition seeking a writ of mandamus to compel the respondents to deliver to him true financial statements of the assets and liabilities of each corporation, the results of the operations and changes in surplus for each corporation for the last year and "to allow the petitioner to examine and make copies of the records of accounts and other records, not heretofore furnished of each corporate respondent." The petition also requested that penalties be assessed against respondents for their refusal to provide petitioner with the information pursuant to G.S. 55-37 and G.S. 55-38.

Petitioner owns approximately 30% of the stock in each corporation; respondent Bell owns the remaining 70% in each. Respondents McLeod and Hall are officers and directors of each corporation but own no stock in either.

Petitioner had previously made written demand on the respondents for the information and stated that his purpose was "the protection of both [his] individual interests and . . . both corporations to allow [him] to determine the true value of his stock, to determine the financial condition of each corporation and to determine whether each corporation is efficiently and properly

managed." Petitioner stated he had suffered damages as a result of respondents' failure to provide the information and cited the expiration of an option "from a willing and able purchaser" to buy his stock at "50% of value." Petitioner alleged that the option expired because value could not be determined without the requested information.

In their response, respondents stated that they had furnished the requested information to petitioner but not copies of the financial statements. They contended that they were justified in refusing the request because petitioner's motive was not proper, *i.e.*, petitioner's motivation was to injure the individual and corporate respondents and to aid competitors.

Evidence for the respondents presented at a show-cause hearing tended to show that the petitioner and respondent Bell each originally owned 50% of the stock of each respondent corporation. Both corporations were in the business of garbage collection. Petitioner later purchased additional stock for $50,000 and Bell purchased additional stock for $150,000. This resulted in an adjustment of stock ownership; petitioner then owned 29.426% of Betty-Rose, Inc. and 28.283% of Belmor Corporation and Bell owned the remaining stock in each. Petitioner was chief executive officer for several years but, as a result of numerous disagreements with Bell, his services were terminated in December 1975. Thereafter, petitioner made several threats to harm the companies and Bell and to compete with the companies. Petitioner in fact did compete with the companies by soliciting business from some customers on behalf of a competitor and by divulging inside information about the companies to competitors. Petitioner did make oral and written requests for financial statements from respondents and they did refuse to furnish it because of petitioner's expressed intention to harm the business and because the optionee told respondents that the option given by petitioner was conditioned on Bell's also selling his stock.

Evidence for the petitioner tended to show that since leaving the companies he has repeatedly tried to obtain financial statements from respondents in order to sell his stock. In October 1976 he gave an option to sell his stock for 50¢ on the dollar and had invested $122,000 in the businesses. The optionee paid $5,000 for the option. The option was contingent upon his providing the

optionee with current financial statements on the companies. Because of respondent's refusal to furnish the statements, the option was not exercised and petitioner returned the $5,000 to the optionee. Petitioner never stated that he intended to harm the respondents and never disclosed confidential financial information to competitors. He did solicit some business from at least one customer of one of the companies for a competitor and himself.

The trial court entered an order on 29 July 1977 finding that petitioner, as a shareholder of both corporations, was entitled, as a matter of law pursuant to G.S. 55-37, to be furnished financial statements of the corporations for the year ending 31 July 1976. The court reserved for jury trial the issue of whether respondents had properly refused to permit petitioner to examine other records pursuant to G.S. 55-38. In order to determine the value of stock for the purpose of assessing penalties against respondents, the trial court retained jurisdiction. The writ of mandamus was issued directing respondents to furnish the designated financial records to petitioner by 5:00 p.m. on 4 August 1977.

Respondents appealed and were given an extension of time to file and serve case on appeal to 18 October 1977.

On 13 October 1977 petitioner moved to dismiss respondents' appeal, to compel compliance with the writ of mandamus and for determination of the amount of penalties to be assessed.

On 10 November 1977 the trial court entered an order finding that the respondents had failed to file the appeal within the time allowed, that respondents had provided petitioner with the requested records on 13 October 1977, and that, based on the findings in the 29 July 1977 writ of mandamus, petitioner is entitled to recover penalties. The trial court therefore (1) dismissed respondents' appeal from the writ of mandamus, (2) denied petitioner's motion to compel compliance with the writ as moot, and (3) assessed penalties of $500 from each company and a total of $251 from each respondent.

Respondents appeal.

*Nance, Collier, Singleton, Kirkman & Herndon, by Rudolph G. Singleton, Jr., for petitioner appellee.*

*MacRae, MacRae, Perry & Pechmann, by Daniel T. Perry, III, for respondent appellants.*

*Joe McLeod, pro se.*

CARLTON, Judge.

[1] Respondents first assign as error the finding of the trial court in its order of 9 November 1977 that petitioner, as a matter of absolute right pursuant to G.S. 55-37, was entitled to be furnished true statements of the assets and liabilities and of the operations and changes in surplus for the fiscal year of respondent corporations. It was on the basis of this finding that penalties were assessed against respondents.

The rights of inspection by shareholders to certain corporate documents are included in the Business Corporation Act, N.C. General Statutes, Chap. 55. The salient provisions are contained in G.S. 55-37 and G.S. 55-38. An understanding of these two statutes is crucial to an understanding of our holding in the case at bar. G.S. 55-37 grants certain *absolute* rights to shareholders; G.S. 55-38 grants certain *qualified* rights to shareholders. Respondents have proceeded in this action without acknowledging the distinction between the two statutes.

The pertinent provisions of G.S. 55-37 provide as follows:

*Books and records.*—(a) Each corporation shall:

. . . .

(4) Cause a true statement of its assets and liabilities as of the close of each fiscal year and of the results of its operations and of changes in surplus for such fiscal year, all in reasonable detail, . . . to be made and filed at its registered office . . . and thereat kept available . . . for inspection on request by any shareholder of record, and *shall mail or otherwise deliver a copy of the latest such statement to any shareholder upon his written request therefor.*

(b) Any shareholder may apply for a writ of mandamus to compel a corporation and its officers and directors to comply with this section. (Emphasis added.)

The pertinent provisions of G.S. 55-38 provide as follows:

*Examination and production of books, records and informa-tion—*

. . . .

(b) A qualified shareholder, upon written demand stating the purpose thereof, shall have the right, in person, or by at-torney, accountant or other agent, at any reasonable time or times, *for any proper purpose*, to examine at the place where they are kept and make extracts from, the books and records of account, minutes and record of shareholders of a domestic corporation. . . . A shareholder's rights under this subsection may be enforced by an action in the nature of mandamus.

. . . .

(d) Any officer or agent or corporation refusing to mail a statement as required by G.S. 55-37 *or* refusing to allow a qualified shareholder to examine and make extracts from the aforesaid books and records of account, minutes and record of shareholders, for any proper purpose, shall be liable to such shareholder in a penalty of ten percent (10%) of the *value* of the shares owned by such shareholder, but not to exceed five hundred dollars ($500.00) . . . . (Emphasis added.)

. . . .

Respondents argue that the qualifying language of G.S. 55-38, *i.e.*, that the requested information be for a "proper purpose", is also applicable to G.S. 55-37. Obviously, under this interpretation, the question of whether petitioner's motives were "proper" would have been an issue for the jury to resolve, as respondents con-tend. We do not believe respondents' interpretation to be the legislative intent.

G.S. 55-37 refers solely to shareholders' rights to inspect, by having mailed or otherwise delivered to them, a copy of a "true statement of its assets and liabilities as of the close of each fiscal year and of the results of its operations and of changes in surplus for such fiscal year." This statute contains no qualifying language. The language is absolute: the corporation *"shall"* mail or other-wise deliver the documents to *"any"* shareholder upon his written request therefor. (Emphasis added.) Our legislature has clearly

decided that the information referred to in this statute is so basic and fundamental that any shareholder is entitled to a copy of it merely by writing for it. The motive of the requesting shareholder is irrelevant.

G.S. 55-38(b), however, refers to *other* corporate records and this statute is qualified. This subsection refers to the rights of qualified shareholders "to examine at the place where they are kept" books and records of account, minutes and record of shareholders. However, the requesting shareholders must have a "proper purpose" in wanting the information. For a shareholder to have the right to actually visit a corporation's office and possibly disrupt its normal operation by inspecting voluminous books and records of account, our legislature has correctly decided that his motives must be "proper".

We believe this to be a sound and logical distinction. The information made available by G.S. 55-37 is annually prepared by any sound business operation. Having to mail its annual financial statements to shareholders who request them is not an undue burden. Indeed, most large business corporations provide this information to all shareholders without any requests being made. Many do so on a quarterly basis. Since any burden on the corporate operation in preparing and delivering this information is minimal, the shareholder's right to it is absolute.

Shareholders could, however, easily abuse the right conferred by G.S. 55-38(b). The information referred to by that section is the actual corporate books, records of account, minutes, and record of shareholders. The right conferred is that of visiting the corporate offices, examining the records, and making extracts therefrom. It would place an obvious undue burden on corporate offices to provide such records to disgruntled shareholders with improper motives. Our legislature wisely limited such inspection rights in this instance to those with "proper purpose".

Respondents also argue that subsection (d) of G.S. 55-38 indicates a legislative intent that the "proper purpose" limitation be extended to G.S. 55-37. That subsection assesses penalties against officers, agents or corporations "refusing to mail a statement as required by G.S. 55-37 *or* refusing to allow a qualified shareholder to examine and make extracts from the aforesaid books and records of account, minutes and record of shareholders,

for *any proper purpose*." (Emphasis added.) The distinction between the information contemplated by the two statutes is clearly carried through in this subsection. The two situations are separated by "or" and penalties are then assessed for failure to provide either. The "proper purpose" qualification is clearly limited to the information contemplated by G.S. 55-38.

Nor do we agree with respondents that *Cooke v. Outland*, 265 N.C. 601, 144 S.E. 2d 835 (1965) is controlling in this action. There, the requested information was limited solely to that contemplated by G.S. 55-38. Our Supreme Court held that the right of shareholders to such information was limited to those with a "proper purpose." There was no request in that action for the information contemplated by G.S. 55-37.

We also note that the petitioner and the trial judge recognized the distinction made herein. Petitioner prayed for the information contemplated by *both* statutes. His petition tracked the language of both statutes.

Likewise, the trial court's orders indicate a correct interpretation of the statutes and application of the facts. The trial court found that petitioner was entitled to the annual financial information contemplated by G.S. 55-37 as a matter of absolute right. With respect to the right to inspect other corporate records, as contemplated by G.S. 55-38, the trial court concluded that issues of material fact arose from the pleadings and "the same is not before this Court at this time". In other words, the trial court issued the writ of mandamus solely on the basis of G.S. 55-37 and the rights of petitioner under G.S. 55-38 were left for jury determination. The trial court therefore acknowledged, as we do, that respondents' pleadings were sufficient to raise the question of petitioner's "purpose" in requesting the information contemplated by G.S. 55-38 and that it was an issue appropriate for jury determination.

With respect to the information contemplated by G.S. 55-37, however, the trial court properly concluded that petitioner's rights were absolute as discussed hereinabove. Moreover, the respondents admitted in pleadings and evidence that they had refused to furnish the requested information. Hence, there was no question of fact remaining for the jury. Only issues of fact which arise on the pleadings, and are determinative of the rights of the

parties to the action must be submitted to the jury. *Jeffreys v. Boston Ins. Co.*, 202 N.C. 368, 162 S.E. 761 (1932); 12 Strong, N.C. Index 3d, Trial, § 18, p. 386.

Finally, we observe that a shareholder has a fundamental right to be intelligently informed about corporate affairs. Corporate officials, on the other hand, should not be forced to allow disgruntled shareholders to roam at will through books and records without a legitimate purpose. Most states have enacted statutes in an attempt to strike a balance between these conflicting demands. In North Carolina, our legislature has determined that shareholders have an absolute right to two matters—the annual financial statement of the corporation and the record of shareholders or the voting list prepared for each meeting of shareholders. Other rights to inspection are qualified in some respect. *See,* Robinson, N.C. Corporation Law and Practice 2d, § 8-1, *et seq.,* p. 161; 18 C.J.S., Corporations, § 499, *et seq.,* p. 1176.

[2] Respondents next contend that the trial court erred in finding as a fact that the value of the shares owned by the petitioner in each corporation was in excess of $5,000. This finding was necessary for the court to assess penalties pursuant to G.S. 55-38(d). Without citing any authority, respondents argue that petitioner's shares in Betty-Rose, Inc. could not possibly be worth $5,000 because its balance sheet reflected a retained earnings deficit of $240,000.

G.S. 55-38 is silent as to a method of determining value. Value is a word of many meanings and may be used in different senses, ascertainment of the meaning of the word admitting of no precise standard. Since it is a relative term, it is necessary that its true meaning be determined by the context in which it appears. 91 C.J.S., Value, p. 798. It is particularly difficult to value stock in a closed corporation. *See, In re Appeal of Amp, Inc.,* 287 N.C. 547, 215 S.E. 2d 752 (1975). In that case, our Supreme Court referred to such matters as what an investor would pay for stock by capitalizing the earnings from the corporate property, determination of the book value of the stock, and consideration of the financial status of the corporation with regard to its capital, surplus and undivided profits. Other factors considered by the Court included the determination of what it would cost to

reproduce corporate property at the time of valuation, utility, growth potential of the corporation, probable future dividends, and good will.

In the context of the case *sub judice*, we believe the proper rule to be that the trial court must consider all material factors and elements which counsel bring to the court and not depend upon any one particular formula exclusively. The weight accorded a theory or factor will vary with the circumstances. *See* Anno., 38 A.L.R. 2d 442 at 446.

Applying the stated rule, we find that the trial court had adequate evidence before it to support its determination of the value of petitioner's stock. This evidence included the retained earnings of the Belmor Corp., the willingness of the optionee to pay $61,000 for the stock, the investments in the corporations by petitioner and respondent Bell, the sale in December 1976 of some assets for $600,000 and various references in the evidence to real and personal properties owned by the corporations. Based on its finding that petitioner's approximate $1/3$ stock ownership in each corporation was worth more than $5,000, the trial court properly assessed penalties pursuant to G.S. 55-38(d).

The decision of the trial court is

Affirmed.

Judges PARKER and HEDRICK concur.