WILLIAM A. CARTER, JR. v. WILSON CONSTRUCTION COMPANY, INC. AND J. RAY WILSON, JR., INDIVIDUALLY

No. 8619SC227

(Filed 7 October 1986)

1. **Corporations § 5.1— examination of corporate records—shareholder action— showing of proper purpose**

    Plaintiff shareholder's evidence was sufficient to show that his request to examine the records of defendant corporation was for "any proper purpose" within the meaning of N.C.G.S. § 55-38(b) where it tended to show that plaintiff offered to sell his stock in defendant corporation to the corporation but his offer was refused; plaintiff had personally guaranteed the debts of a leasing company which conducted related transactions with defendant corporation, including indemnifying its debts and extending loans; and plaintiff had reason to believe, based on information obtained from defendant corporation's management consultant, that certain purchases had not been put on the corporate books, that funds were shuffled between the leasing company and defendant corporation, and that the net worth of defendant corporation had decreased in the past year. Furthermore, defendants' evidence that plaintiff is currently part owner and employee of a business in competition with defendant corporation was insufficient to override the presumption that plaintiff is acting in good faith.

2. **Corporations § 5.1— examination of corporate records—shareholder action— statutory penalty**

    The trial court could properly assess under N.C.G.S. § 55-38(d) a $500 penalty against a corporation and another $500 penalty against the corporation's president for refusing to allow a qualified shareholder to examine the corporation's records, the maximum total penalty not being limited by the statute to $500.

**3. Corporations § 5.1 — examination of corporate records — alleged good faith refusal — no mitigating circumstance**

Defendants' contention that a corporation's refusal to allow a qualified shareholder to examine its records was based on its good faith interest in "wanting to protect its current business practices from being divulged to a direct competitor" did not require the trial court to find a mitigating circumstance to compel a decrease in the penalty assessed under N.C.G.S. § 55-38(d) for the refusal to allow the shareholder to examine the corporation's records.

**4. Corporations § 5.1 — examination of corporate records — shareholder action — statutory penalty — value of stock**

The evidence was sufficient to support the court's finding that the value of plaintiff's shares in defendant corporation was at least $20,000 at the time of trial and to support the amount of the penalty assessed by the court under N.C.G.S. § 55-38(d).

**5. Attorneys at Law § 7.5 — examination of corporate records — shareholder action — attorney fee not allowable**

The trial court erred in taxing an attorney fee as part of the costs in a shareholder's action under N.C.G.S. § 55-38 for a writ of mandamus requiring defendants to permit plaintiff to examine a corporation's records and to recover a penalty for defendants' refusal to permit plaintiff to examine the records, since there was no statutory basis for the award of such a fee.

APPEAL by defendants from *Freeman, Judge.* Judgment entered and writ of mandamus issued 1 October 1985 in Superior Court, ROWAN County. Heard in the Court of Appeals 20 August 1986.

On 14 September 1984, plaintiff, a minority stockholder in defendant corporation, instituted this action petitioning for a writ of mandamus ordering defendants to make available to plaintiff books and records of account, minutes, and record of shareholders of defendant corporation. The complaint also prayed for penalties to be assessed against defendants in the amount of ten percent (10%) of the value of plaintiff's shares, not to exceed five hundred dollars ($500.00) pursuant to G.S. 55-38(d) and for an award of attorney's fees. On 2 January 1985, defendants answered. On 1 October 1985, the court concluded the following as a matter of law: that defendants' refusal to allow plaintiff to examine the corporate records was improper; that plaintiff was entitled to a writ of mandamus; that plaintiff was entitled to recover a penalty of $500.00 from each defendant; and that plaintiff was entitled to recover from defendants jointly and severally the sum of two hundred fifty dollars ($250.00) as reasonable attorney's fees due to

"the unwarranted and unjustified refusal" of defendants to make the requested records available to plaintiff. Defendants appeal.

*Woodson, Linn, Sayers, Lawther & Short, by Donald D. Sayers, for plaintiff appellee.*

*Kluttz, Hamlin, Reamer, Blankenship and Kluttz, by Richard R. Reamer, for defendant appellants.*

JOHNSON, Judge.

Plaintiff owns 317 shares of the common stock of defendant corporation. Plaintiff also owns approximately twenty percent (20%) of the outstanding shares of Wilson Equipment Leasing, Inc., a company which leases equipment to defendant corporation and conducts related transactions with defendant corporation. Plaintiff is now part owner and employee of C & L Contracting, Inc., which, according to defendants, is "in direct competition with [defendant corporation]."

Defendant Wilson is president of the corporate defendant Wilson Construction Company, Inc. Plaintiff, through his attorney, made two written demands for the information at issue prior to filing his complaint. Defendant Wilson responded after the second letter of demand, refusing to make the requested information available.

Plaintiff subsequently instituted this action alleging in his complaint, *inter alia*, that he is a former officer and employee of defendant corporation; that since his resignation as officer and employee on 8 November 1983 he has been unable to gain information regarding defendant corporation; that he is informed and believes that the financial condition of defendant corporation has deteriorated and that such deterioration may be due to improper management; and that his offer to sell his stock to defendant corporation was rejected. Plaintiff further alleged that he requested the information for the following stated purpose: "in order to determine the value of his shares, the financial condition of the company, and whether it is efficiently and properly managed in the best interests of the corporation."

[1] Defendants contend in their first Assignment of Error that the court erred in finding that plaintiff had a proper purpose for obtaining access to the corporate information he requested. De-

fendants further contend that plaintiff's stated purpose was "a mask for more illegitimate purposes that would damage [defendant corporation's] ability to compete." Defendants characterize plaintiff as a "disgruntled minority shareholder" who "left his position without notice," leaving both companies "in pretty bad shape" in order to start his own competing business.

Plaintiff requested access to the records of Wilson Equipment Leasing in the same two letters he requested access to the records at issue. Defendant Wilson granted plaintiff's request to examine those records at the same time he denied plaintiff's request to see defendant corporation's records. Defendants argue that plaintiff's failure to examine the records of Wilson Equipment Leasing as of the time of trial is further evidence of plaintiff's bad faith and his desire to harass the corporate defendant's management.

The pertinent portion of G.S. 55-38 provides as follows:

(b) A qualified shareholder, upon written demand stating the purpose thereof, shall have the right, in person, or by attorney, accountant or other agent, at any reasonable time or times, *for any proper purpose*, to examine at the place where they are kept and make extracts from, the books and records of account, minutes and record of shareholders of a domestic corporation or those of a foreign corporation actually or customarily kept by it within this State. . . . A shareholder's rights under this subsection may be enforced by an action in the nature of mandamus.

(Emphasis added.)

It is undisputed by the parties that plaintiff is a qualified shareholder. The issue is whether plaintiff's request to examine the corporate records was for "any proper purpose." Absent a statutory restriction, a shareholder has a common law right to inspect and examine the books and records of the corporation, given to him for the protection of his interests. *Cooke v. Outland*, 265 N.C. 601, 610, 144 S.E. 2d 835, 841 (1965). G.S. 55-38(b) does not give a qualified shareholder an absolute right of inspection and examination for a mere fishing expedition, or for a purpose not germane to the protection of his economic interest as a shareholder in the corporation. *Id.* at 611, 144 S.E. 2d 842. For a

shareholder to have the right to actually visit a corporation's office and possibly disrupt its normal operation in order to inspect corporate books and records of account, our legislature has correctly decided that his motives must be "proper." *Morgan v. McLeod,* 40 N.C. App. 467, 473, 253 S.E. 2d 339, 342, *disc. rev. denied,* 297 N.C. 611, 257 S.E. 2d 436 (1979). Purposes which previously have been deemed proper are the shareholder's good faith desire to (1) determine the value of his stock; (2) investigate the conduct of the management; and (3) determine the financial condition of the corporation. *See Cooke v. Outland, supra,* at 611-12, 144 S.E. 2d at 842 (quoting Annot., 15 A.L.R. 2d 11 secs. 7-8 (1951)). The burden of proof rests upon the defendants, if they wish to defeat the shareholder's demand, to allege and show by facts, if they can, that the shareholder is motivated by some improper purpose. *Id.* at 615, 144 S.E. 2d at 845. "In issuing the writ of mandamus the court will exercise a sound discretion, and grant the right under proper safeguards to protect the interests of all concerned." *Id.* at 613, 144 S.E. 2d 843, *quoting Guthrie v. Harkness,* 199 U.S. 148, 156, 50 L.Ed. 130, 133, 26 S.Ct. 4, 6 (1905).

Here, plaintiff stated a proper purpose in his complaint. Defendants must overcome the presumption of good faith in plaintiff's favor by showing that plaintiff's purpose is improper. The evidence adduced at trial by plaintiff tended to show: that plaintiff tried to sell his stock in defendant corporation to defendant corporation, who declined plaintiff's offer to sell; that plaintiff had personally guaranteed the debts of Wilson Equipment Leasing, a corporation which conducted related transactions with defendant corporation, including indemnifying its debts and extending loans; that plaintiff had reason to believe, based on information obtained from defendant corporation's management consultant, that certain purchases had not been put on the corporate books; that funds were shuffled between Wilson Equipment Leasing and defendant corporation; and that the net worth of defendant corporation decreased from August 1983 to August 1984. This evidence supports plaintiff's allegation of a proper purpose.

The evidence adduced at trial by defendants showed that plaintiff is currently part owner and employee of a business, C & L Contracting. According to the testimony of defendant Wilson, "[W]e are in direct competition on all work in the [P]iedmont, North Carolina, that is bridge work" and that to allow plaintiff ac-

cess to the books and records of accounts of defendant corporation "would put us at a disadvantage."

This evidence is insufficient to override the presumption that plaintiff is acting in good faith. As stated in *Cooke v. Outland, supra,* at 613, 144 S.E. 2d at 843, the mere possibility that a shareholder may abuse his right to gain access to corporate information will not be held to justify a denial of a legal right, if such right exists in the shareholder. The trial court properly exercised its discretion in issuing a writ of mandamus. This Assignment of Error is overruled.

[2]   Next, defendants contend that the court erred in assessing total penalties of $1,000.00, that is $500.00 from each defendant. Specifically, defendants contend that the penalty is improper in the following regards: (1) the maximum total penalty allowed under G.S. 55-38(d) is $500.00; (2) the court erroneously failed to find mitigating circumstances which would allow for a decrease in the amount of the penalty; and (3) the penalty was based on a value of "at least $20,000.00" for plaintiff's shares in defendant corporation at the time of trial, a value that was insufficiently supported by the evidence. We disagree with each of these contentions. We will address each contention in turn.

G.S. 55-38(d) provides, in pertinent part:

(d) Any officer or agent or corporation refusing to mail a statement as required by G.S. 55-37 or refusing to allow a qualified shareholder to examine and make extracts from the aforesaid books and records of account, minutes and record of shareholders, for any proper purpose, shall be liable to such shareholder in a penalty of ten percent (10%) of the value of the shares owned by such shareholder, but not to exceed five hundred dollars ($500.00), in addition to any other damages or remedy afforded him by law, but the court may decrease the amount of such penalty on a finding of mitigating circumstances.

The plain meaning of the disjunctive "or" indicates that the ceiling penalty of $500.00 may be assessed against each of "[a]ny officer or agent or corporation." G.S. 55-38(d). In *Morgan v. McLeod, supra,* the corporate defendant was assessed a penalty of $500.00 and the two individual defendant officers were assessed a penalty of $251.00 each.

[3]  Two, although the statute provides that "the court may decrease the amount of such penalty on a finding of mitigating circumstances," there is no authority compelling the court to find mitigating circumstances. We are unpersuaded by defendants' argument that the corporation's good faith interest in "wanting to protect its current business practices from being divulged to a direct competitor" requires finding a mitigating circumstance sufficient to compel a decrease in the penalty.

[4]  Three, this Court alluded to the difficulty in valuing stock in a closed corporation in *Morgan v. McLeod, supra,* at 475, 253 S.E. 2d at 344. "Since it is a relative term, it is necessary that its true meaning be determined by the context in which it appears." *Id.*

In the case *sub judice*, the court made the following finding of fact:

12. Evidence was presented by the plaintiff-petitioner in the form of a financial statement for the defendant-respondent corporation showing the shareholders' equity to be $81.98 per share as of August 31, 1983, and while the defendant-respondent, J. Ray Wilson, Jr., president of the defendant-respondent, Wilson Construction Co., Inc., testified the said corporation was worthless at the time of trial, it is found that the value of plaintiff-petitioner's 317 shares is worth at least $20,000.00 at the time of trial.

The only evidence bearing on value that was not specifically addressed in this finding of fact is defendant Wilson's testimony to the effect that an August 1984 financial statement showed an unspecified decrease in value from the August 1983 financial statement. However, no financial statement for 1984 was introduced into evidence. The evidence before the court on 9 May 1985, the day of trial, regarding value was: a 1983 financial statement showing a value of $81.98 per share for 317 shares, which totals $25,987.66, and defendant's testimony that plaintiff's stock is now worth zero. The trial court's finding of fact is conclusive if supported by any competent evidence. *Little v. Little,* 9 N.C. App. 361, 365, 176 S.E. 2d 521, 523-24 (1970). The evidence in the case *sub judice* is sufficient to support the court's finding that the value of plaintiff's shares was worth at least $20,000.00 at the time of trial. This Assignment of Error is overruled.

[5] In defendants' last Assignment of Error they challenge the propriety of an award of attorney's fees in the amount of $250.00. The court made the following finding of fact with respect to attorney's fees:

> 13. The plaintiff-petitioner's attorney of record rendered valuable legal services to the plaintiff-petitioner in the prosecution of this action.

The court made the following conclusion of law with respect to attorney's fees:

> 2. The plaintiff-petitioner is entitled, pursuant to N.C.G.S. [sec.] 55-38(d) to an award from each defendant-respondent of a penalty of 10% of the value of the shares owned by plaintiff-petitioner, not to exceed $500.00, together with a reasonable attorney's fee due to the unwarranted and unjustified refusal by the said defendants-respondents.

In this jurisdiction attorney's fees may not be taxed as a part of the costs, absent an express statutory provision for attorney's fees. *Hopkins v. Barnhardt*, 223 N.C. 617, 620, 27 S.E. 2d 644, 646 (1943). Although G.S. 55-38 does provide for a penalty, it does not expressly provide for an award of attorney's fees. Statutes imposing a penalty are to be strictly construed. *Carolina Milk Producers Assoc. Co-op., Inc. v. Melville Dairy, Inc.*, 255 N.C. 1, 120 S.E. 2d 548 (1961). G.S. 55-38 does not provide statutory authority for an attorney fee award. We know of no other statutory authority for this attorney fee award based on the court's finding and conclusion as stated above. The award of attorney's fees in the amount of $250.00 has no statutory basis and cannot stand. Accordingly, we reverse only that portion of the court's judgment awarding attorney's fees.

Affirmed in part.

Reversed in part.

Judges BECTON and COZORT concur.