## Roderick M. Towle, as Executor of the Estate of James F. Tooley

### v.

## Robinson Springs Corporation and Olaf Rasmussen

[719 A.2d 880]

No. 97-328

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed August 28, 1998

*Peter G. Anderson,* Stowe, for Plaintiff-Appellee.

*Harold B. Stevens* and *Elizabeth A. Magovern,* Law Clerk (On the Brief), of *Stevens Law Office,* Stowe, for Defendant-Appellant.

**Amestoy, C.J.** Defendant Robinson Springs Corporation (RSC) appeals from an order of the Lamoille Superior Court directing it to provide James F. Tooley access to its books and records and to pay the

shareholder's attorney's fees.[*] RSC argues that the court erred in (1) ordering it to allow the shareholder to inspect its records and adopting the shareholder's proposed findings verbatim, and (2) awarding attorney's fees. We affirm the trial court's ruling, but remand for further evidence as to the reasonableness of the award of attorney's fees.

Tooley was a shareholder of RSC, a closely held Vermont corporation. In 1995, he requested to inspect RSC's books and records in order to examine its accounting practices and allegedly excessive expenses. RSC denied this request. Later the same year, Tooley renewed his request, asking to inspect RSC's payroll journals, cash disbursement journals, purchase journals, cash receipts journals, the general ledger, and RSC's federal and state corporate income tax returns. Tooley requested these materials for the stated purposes of valuating his shares of RSC stock and ascertaining the financial status and health of the corporation. RSC again denied the request. In response to this refusal, Tooley sought an injunction requiring RSC to make its books and records available for inspection and examination.

The court found that Tooley had made the request in good faith and for a proper purpose. See 11A V.S.A. § 16.02(c)(1) (requiring such showing as prerequisite to inspection rights). The court also found that RSC had no reasonable basis to deny the request because it had failed to meet its burden to prove that the request was made for an improper purpose. The court then ordered RSC to produce specific corporate records for inspection, and, pursuant to 11A V.S.A. § 16.04(c), to pay all costs, including Tooley's reasonable attorney's fees. RSC appeals.

## I. The Shareholder's Right to Inspection

RSC argues that the court erred in ordering the inspection of its books and records because Tooley did not have a proper purpose to conduct the inspection and because substituted items would suffice. Vermont's Business Corporation Act, 11A V.S.A. §§ 1.01 - 20.16, permits a shareholder to inspect and copy corporate records only if "(1) the shareholder establishes that the shareholder's demand is made in good faith and for a proper purpose; (2) the shareholder

---

[*] During the pendency of this appeal James F. Tooley died. Pursuant to an order of this Court, Roderick M. Towle, executor and sole trustee of appellee's estate, was substituted as the proper party. See V.R.A.P. 43(a).

describes with reasonable particularity the shareholder's purpose and the records the shareholder desires to inspect; and (3) the records are directly connected with the shareholder's purpose." *Id.* § 16.02(c). In a request to inspect corporate records, the shareholder bears the initial burden of stating a proper purpose. See 11A V.S.A. § 16.02(c)(1).

■ There is little guidance from Vermont case law on what constitutes a proper purpose. Vermont's Business Corporation Act does not directly follow the Model Business Corporation Act, but we have looked in the past to both commentary on the Model Act and case law from other states to provide guidance in interpreting Vermont's law. See *Kalanges v. Champlain Valley Exposition, Inc.*, 160 Vt. 644, 645, 632 A.2d 357, 358 (1993) (mem.). To be proper, a purpose must be reasonably relevant to one's interests as a shareholder. See *id.* Proper purposes include the valuation of shares, ascertaining the possibility of mismanagement, and determining the performance and condition of the company. See *id.*; *CM & M Group, Inc. v. Caroll*, 453 A.2d 788, 792 (Del. 1982); *Helmsman Management Servs., Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 165 (Del. 1987) (situations may arise in closely held corporation where shareholder needs to valuate his stock "to enable him to decide whether or not to sell, and, if so, on what terms"). Claims of mismanagement, however, must be supported by evidence. See *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d 1026, 1031 (Del. 1996). Finally, although a single proper purpose is sufficient to warrant an inspection, see *Weigel v. O'Connor*, 373 N.E.2d 421, 428 (Ill. App. Ct. 1978), requesting an inspection for harassment or to satisfy idle curiosity constitutes an improper purpose. See *CM & M Group*, 453 A.2d at 792.

When requesting to inspect a corporation's records, the shareholder must state the proper purpose and the records to be searched with reasonable particularity. See 11A V.S.A. § 16.02(c)(2). Moreover, the requested records must be "directly connected with the shareholder's purpose." 11A V.S.A. § 16.02(c)(3). If the purpose is valuation of stock, the essential data needed are, in large part, a factual determination to be overturned only if clearly erroneous. See *CM & M Group*, 453 A.2d at 793.

■ Once a shareholder asserts a proper purpose, the burden then shifts to the corporation to prove that an improper purpose is the primary purpose for inspection or that the shareholder's request is made in bad faith. See *Compaq Computer Corp. v. Horton*, 631 A.2d

1, 3 (Del. 1993) ("[W]hen a stockholder complies with the statutory requirements as to form and manner of making a demand, then the corporation bears the burden of proving that the demand is for an improper purpose."); see also *Kalanges*, 160 Vt. at 646, 632 A.2d at 359 (the trend is to presume a proper purpose and shift the burden to defendant to prove an improper purpose) (citing *Miles v. Bank of Heflin*, 328 So. 2d 281, 288 (Ala. 1975)). Hostility between parties, however, is not itself sufficient to prevent access to corporate records. See *Kalanges*, 160 Vt. at 645, 632 A.2d at 359.

## II. The Court's Findings and Conclusions

RSC claims error in the court's ultimate conclusion that the evidence presented by Tooley established that "his reasons for seeking to inspect the records . . . [were] reasonably relevant to his interests as a shareholder." RSC contends this conclusion is not supported by the findings of fact. It asserts that no credible evidence exists to support three of the court's fifty-five findings of fact and challenges the court's verbatim adoption of Tooley's proposed findings. In order to overturn a factual finding, "appellant must show [that] there is no credible evidence to support the finding." *Highgate Assocs. v. Merryfield*, 157 Vt. 313, 315, 597 A.2d 1280, 1281 (1991). The trial court may adopt proposed findings verbatim. See V.R.C.P. 52(a)(2); *Mills v. Mills*, 167 Vt. 567, 569, 702 A.2d 79, 81 (1997) (mem.).

RSC argues that the court erred in finding that because its financial statements had not been audited, they were unreliable. It contends that the court relied solely on Tooley's testimony for this finding despite contrary evidence and testimony from RSC's accountant. The court, however, found the evidence and testimony Tooley presented to be more credible. "When the evidence is conflicting the credibility of the witnesses, the weight of the evidence, and its persuasive effect are questions for the trier of fact, and its determination must stand if supported by credible evidence even though there may be inconsistencies or substantial evidence to the contrary." *Concra Corp. v. Andrus*, 141 Vt. 169, 173, 446 A.2d 363, 365 (1982).

RSC asserts that two findings related to its response to Tooley's requests were not supported by credible evidence. First, the court found that "[a]s a shareholder of RSC, plaintiff has had ongoing concerns regarding the management of RSC which he has addressed to the corporation through Olaf Rasmussen [RSC's president]. RSC has failed to adequately respond to said concerns." Second, the court found that "[d]espite repeated requests by plaintiff to examine the

corporate records, RSC has denied plaintiff personal access to said records. Instead, RSC has attempted to predetermine who should access the records on behalf of Plaintiff and which records could be accessed." The record supports both of the challenged findings. The shareholder wrote letters in 1985 and 1986 to Rasmussen voicing concerns about RSC's management. In addition, the record contains at least four letters from Tooley's attorney to RSC and its attorney over a six month period in late 1995. These letters state Tooley's concerns about mismanagement and his desire to inspect RSC's books and records. In response to these requests, Rasmussen and his attorney reiterated RSC's refusal to allow Tooley to inspect the books because he had allegedly failed to establish good faith and a proper purpose. Although on occasion RSC wrote that it would allow inspection of a portion of its records, the record supports the court's findings that the records offered for review by RSC were insufficient to adequately address Tooley's concerns.

Finally, RSC argues that at most, Tooley established only a need to inspect corporate records related to a mortgage transaction involving the son of the president of the corporation, and the payment of rent by the president's spouse. The extent and scope of an inspection is largely a factual determination to be overturned only if clearly wrong. See *CM & M Group*, 453 A.2d at 793. RSC's argument to limit the scope of Tooley's inspection to specific transactions is contravened by the findings of the trial court. Those findings — that Tooley was entitled to inspect records related to the value of the corporation's stock, the financial status of the corporation, and claims of financial mismanagement — are adequately supported by the record. Accordingly, the court's findings will not be disturbed.

### III. Attorney's Fees

RSC contends that the court erred in awarding Tooley attorney's fees. Under the Business Corporation Act, "[i]f the court orders inspection and copying of the records demanded, it shall also order the corporation to pay the shareholder's costs (including reasonable counsel fees) incurred to obtain the order." 11A V.S.A. § 16.04(c). The award may be avoided if "the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded." *Id*. The court concluded that RSC did not meet this burden, and we discern no clear error. Where an award of reasonable attorney's fees

is statutorily proper, it will not be reversed. See *In re Gadhue*, 149 Vt. 322, 327, 544 A.2d 1151, 1154 (1987) (under American Rule, awarding attorney's fees is proper if statutorily authorized).

The corporation contends that even if an award of attorney's fees is proper, there was insufficient evidence to support the reasonableness of the amount. In view of the court's statement that it was "difficult if not impossible . . . to conclude from the evidence presented which of Attorney Anderson's charges were reasonable and necessary," we remand for further evidence as to the reasonableness of the award of attorney's fees. See *Bruntaeger v. Zeller*, 147 Vt. 247, 255, 515 A.2d 123, 128 (1986) (When an attorney's fees in dispute, "the record is often best served on the issue of reasonableness by the receipt of expert testimony from independent counsel.").

*Affirmed, except the award of attorney's fees, which is remanded for further proceedings.*