Beam v. Beam Rest Home, Inc., 2014 NCBC 46.

STATE OF NORTH CAROLINA

GASTON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 4710

CHRANSON BEAM, by and through his
Attorney-in-Fact, DAWN MAUNEY,

        Plaintiff,

v.

BEAM REST HOME, INC.

        Defendant.

**ORDER AND FINAL JUDGMENT**

{1}    **THIS MATTER** is before the Court upon Plaintiff Chranson Beam's ("Plaintiff") Motion for Expedited Hearing, Relief and Briefing Schedule (the "Motion")[1] in the above-captioned case concerning Plaintiff's request to inspect and copy Defendant's corporate records. Based on the Motion, briefs in support of and in opposition to the Motion, and the arguments of counsel at the July 31, 2014 hearing, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion. Because the entry of this Order resolves all matters in controversy between the parties, the Court enters final judgment consistent with the terms of this Order.

*Arthurs & Foltz, LLP by Douglas P. Arthurs for Plaintiff Chranson Beam.*

*Gray, Layton, Kersh, Solomon, Furr & Smith, P.A. by Michael Carpenter for Defendant Beam Rest Home, Inc.*

Bledsoe, Judge.

I.

PROCEDURAL HISTORY AND FACTUAL BACKGROUND

{2}    This case involves a request to inspect and copy original corporate records by a minority shareholder and director of a closely held corporation.

{3}    Plaintiff is, and at all times relevant to this action was, a shareholder and director of Defendant Beam Rest Home, Inc. ("Defendant"). (Compl. ¶¶ 5, 10.) This

---

[1] Although Plaintiff's Motion seeks an expedited briefing and hearing schedule, that portion of the Motion is now moot. Therefore, the Court does not consider Plaintiff's request for expedited hearing and briefing schedule in the determination of this Motion.

is the second lawsuit Plaintiff has filed seeking, at least in part, inspection and copying of Defendant's corporate records.[2]

{4} On December 18, 2013, Plaintiff requested in writing that Defendant "immediately mail or otherwise cause to be delivered to Plaintiff a current, true statement of the corporation's assets and liabilities as of the close of fiscal years 2010, 2011, 2012, and 2013, in addition to the results of its operations and changes in surplus for those fiscal years." (Compl. ¶ 7.) In that same letter, Plaintiff made a demand to inspect the books, records, and documents of Defendant in his capacity as a director and shareholder of Defendant. (*Id.*, ¶¶ 12–17.) Plaintiff demanded access to the records on or before December 31, 2013. (Def.'s Resp. Mot., p. 2.)

{5} Defendant responded to Plaintiff by email on December 27, 2013, stating that it could not provide access to the records by the requested date because of the intervening holidays, and that it would produce records in January 2014. (Sam Beam Aff. ¶ 8, March 26, 2014.) In response, on December 31, 2014, Plaintiff filed the Complaint in this action seeking access to Defendant's corporate records under N.C.G.S. §§ 55-16-01 *et seq.*[3]

{6} This case was designated a mandatory complex business case on January 3, 2014. Plaintiff unsuccessfully opposed designation of the case as a mandatory complex business case, and the case was then assigned to this Court (Murphy, J.) on January 31, 2014 and thereafter to the undersigned on July 2, 2014.

{7} In response to Plaintiff's demand for records, Defendant provided over 1,100 pages of responsive records on February 3, 2014, including financial statements and some, but not all, tax returns for years 2010–2012. (Sam Beam Aff. ¶ 10; Report of Special Master, p. 3, June 25, 2014.) Defendant's production was in

---

[2] The first action between these parties was Civil Action No. 13 CVS 389 in Gaston County Superior Court. Plaintiff voluntarily dismissed that action without prejudice on November 8, 2013.

[3] Plaintiff has asserted three claims in his Complaint pursuant to which he seeks a judgment from this Court ordering Defendant to (i) produce Defendant's financial statements to Plaintiff under N.C.G.S. § 55-16-20, (ii) permit Plaintiff's inspection and copying of Defendant's records as a director of Defendant under N.C.G.S. § 55-16-05(c), and (iii) permit Plaintiff's inspection and copying of Defendant's records as a shareholder of Defendant under N.C.G.S. § 55-16-04.

addition to Defendant's prior corporate record productions to Plaintiff totaling over 5,000 pages of documents in 2012 and 2013. (Beam Aff. ¶ 3–5.)[4] After receiving these records, Plaintiff filed the instant Motion on March 3, 2014, requesting that the Court order an expedited briefing and hearing schedule and order Defendant to permit Plaintiff to inspect and copy Defendant's corporate records on an expedited basis. (Pl.'s Br. Supp. Mot., p. 5–9.) Defendant filed its response to the Motion on March 26, 2014.

{8}     With consent of the parties, the Court entered a Consent Order on April 4, 2014, appointing Kimberly M. Spicer to serve as a referee or special master and ordering her to determine (1) "[w]hether [Defendant] has properly maintained 'appropriate accounting records' as required by N.C.G.S. § 55-16-01(b)," (2) "[w]hat, if any, corporate records were provided to Plaintiff by Defendant pursuant to Plaintiff's demand dated December 18, 2013," and (3) "[w]hat, if any, corporate records sought by Plaintiff in his request for inspection of records (as attached to the Complaint), and that were required to be maintained under N.C.G.S. § 55-16-01(b), were not provided by Defendant in response to the request for the calendar years 2010 through 2013." *Beam v. Beam Rest Home, Inc.*, No. 13 CVS 4710 (N.C. Super. Ct. Apr. 4, 2014) (appointing referee). The Court expressly reserved the right to reallocate Ms. Spicer's costs following a determination of the case on the merits. *Id.*

{9}     Plaintiff filed the Report of Special Master on July 14, 2014. In her Report, Ms. Spicer determined that Defendant maintained adequate records as required by N.C.G.S. § 55-16-01(b) and that Defendant had produced to Plaintiff most, but not all, of the records Plaintiff requested in his December 18, 2013 letter. (Report of Special Master, p. 2–4.)

{10}     Ms. Spicer specifically identified ten categories of documents she determined that Plaintiff had not yet received from Defendant. (*Id.*) Defendant

---

[4] Defendant submits that it provided a large volume of original records to Plaintiff for a period of six months in 2012 but failed to make a record of the documents it provided. As a result, Defendant reports that it is unable to advise which of its documents were produced at that time.

asserts that these records totaled about 400 pages of documents, that these documents had not been produced due to inadvertence or oversight, and that the vast majority of requested documents had been previously produced. (Def.'s Suppl. Resp. Mot., p. 3.)

{11} Shortly thereafter, on July 23, 2014, Defendant provided to Plaintiff copies of all of the records Ms. Spicer had determined Defendant had not yet provided to Plaintiff. (*Id.*, p. 2.)

{12} Both parties agree that as of Defendant's July 23, 2014 production, Defendant had provided copies of all records that Plaintiff is entitled to inspect and copy under the applicable statutes. Defendant therefore contends that Plaintiff's Motion is now moot and that this action should be dismissed without further relief to Plaintiff. Plaintiff disagrees, contending for the first time in his July 30, 2014 Supplemental Reply that he has been denied his right to inspect Defendant's original corporate records under N.C.G.S. §§ 55-16-02 and 55-16-05 and that he is entitled to an award of reasonable attorney's fees for Defendant's refusal to permit inspection of Defendant's original records.

II.

ANALYSIS

A.

PLAINTIFF'S RIGHT TO INSPECT AND COPY CORPORATE RECORDS

{13} As noted, Plaintiff is a shareholder and director of Defendant.

{14} N.C.G.S. § 55-16-02(a) provides that:

> [a] qualified shareholder of a corporation is entitled to inspect and copy, during regular business hours at the corporation's principal office, any of the records of the corporation described in G.S. 55-16-01(e) if he gives the corporation written notice of his demand at least five business days before the date on which he wishes to inspect and copy.

N.C.G.S. § 55-16-02(a) (2014). Further, N.C.G.S. § 55-16-02(b) provides a qualified shareholder the right to inspect and copy additional records if (1) "his demand is made in good faith and for a proper purpose," (2) "[h]e describes with reasonable particularity his purpose and the records he desires to inspect," and (3) "[t]he records are directly connected with his purpose."

{15}  N.C.G.S. § 55-16-05(a) provides that:

> [a] director is entitled to inspect and copy the books, records, and documents of the corporation at any reasonable time to the extent reasonably related to the performance of the director's duties as a director . . . but not for any other purpose or in any manner that would violate any duty to the corporation.

{16}  A proper purpose for a shareholder inspection demand is any "purpose that is reasonably relevant to the demanding shareholder's interest as a shareholder." N.C.G.S. § 55-16-02 cmt. 3 (2014); *see generally* Russell M. Robinson, II, ROBINSON ON NORTH CAROLINA CORPORATION LAW, § 10.03[1] (7th ed. 2013).  The North Carolina courts have previously found a shareholder's "good faith desire to (1) determine the value of his stock; (2) investigate the conduct of the management; and (3) determine the financial condition of the corporation" as proper purposes supporting a demand for corporate records.  *Carter v. Wilson Constr. Co.*, 83 N.C. App. 61, 65, 348 S.E.2d 830, 832 (1986).  To defeat Plaintiff's demand as a shareholder, Defendant must "allege and show by facts" that Plaintiff's motive is improper.  *Id.*  On the other hand, to defeat Plaintiff's demand as director, Defendant must show that Plaintiff's demand is not "reasonably related to the performance of [his] duties as a director."  N.C.G.S. § 55-16-05(a).

{17}  Plaintiff broadly identified his purpose for requesting Defendant's corporate records in his December 18, 2013 letter by stating that "[i]t is the duty of [Plaintiff] to ensure that the corporate assets are being properly utilized for proper corporate business" and that Plaintiff "has determined that the assets of [Defendant] have been used for the benefit of other directors and officers of the corporation and for the benefit of other shareholders to the detriment of [Defendant] and all remaining shareholders." (Compl., Ex. A.)[5]

{18}  Plaintiff acknowledges that he has received copies of all the documents he has sought to inspect and copy in this action but now claims he is entitled to inspect

---

[5] In contrast to Plaintiff's current demand to inspect Defendant's original records, whether Plaintiff's December 18, 2013 letter request was for a "proper purpose" under N.C.G.S. § 55-16-02(b) was rendered moot by Defendant's voluntary production to Plaintiff of copies of all requested documents.

and copy Defendant's original records at Defendant's principal office.  Defendant claims that because it has delivered duplicate copies of the requested records to Plaintiff, Defendant has complied with its obligations under the law and is not required to allow on-site inspection of Defendant's original records.

{19}  N.C.G.S. § 55-16-02 provides that "[a] qualified shareholder of a corporation is entitled to inspect and copy [the corporation's relevant records], during regular business hours at the corporation's principal office . . . ."  Similarly, N.C.G.S. § 55-16-05 provides that "[a] director of a corporation is entitled to inspect and copy the books, records, and documents of the corporation at any reasonable time . . . .").  While each statute contemplates that the corporation's corporate records will be provided, neither statute specifically requires that the corporation produce original records or expressly provides that the corporation cannot satisfy its obligation by producing true and accurate duplicate copies of the corporation's original records.  *Compare Cooke v. Outland*, 265 N.C. 601, 144 S.E.2d 835 (1965) (holding under prior statute that "[a] qualified shareholder, upon written demand stating the purpose thereof, shall have the right . . . to examine at the place where they are kept and make extracts from, the books and records of account . . .").

{20}  A primary purpose of the shareholder and director inspection statutes is to permit a shareholder and a director to become adequately informed about important matters relating to the affairs of the company, and in particular, to the shareholder's investment in the corporation and to the fulfillment of the director's fiduciary duty to the corporation.  *See generally* ROBINSON ON NORTH CAROLINA CORPORATION LAW, §§ 10.01–10.03; 15.05[1].  Under modern practice, shareholders, directors and their counsel typically receive duplicate copies of requested documents, either in hard copy or digital form, and, absent illegibility or good cause to suspect that the copies are not a true and accurate reproduction of the original records, do not insist on a visit to the corporation's principal office for a physical inspection of the corporation's original records.

{21}  Although acknowledging that he has received copies of all the records he has requested through this lawsuit, Plaintiff nevertheless insists on an inspection of

Defendant's original records here. Plaintiff, however, has not identified any evidence to suggest that the copies he has received are not true and accurate duplicate copies of Defendant's original records. Moreover, Ms. Spicer, as referee, has previously inspected Defendant's original records (without noting any irregularities or concerns regarding authenticity) and provided a full list of Defendant's available corporate documents such that Plaintiff could determine that Defendant has provided copies of all requested documents. Indeed, it appears that Plaintiff's request at this point has much more to do with his attempt to secure an order compelling inspection and copying of Defendant's records to provide a basis for his claim for attorney's fees than it does with any legitimate effort to inform himself in his roles as a shareholder and as a director.

{22} Accordingly, in these circumstances and under these facts, the Court concludes that Plaintiff has not shown that his newly-conceived request for original records is for a proper purpose under N.C.G.S. § 55-16-02(b) or is "reasonably related to the performance of [his] duties as a director" under N.C.G.S. § 55-16-05(a). As a result, the Court concludes that Plaintiff is not entitled to an order compelling Defendant to permit Plaintiff a further opportunity to inspect and copy Defendant's corporate records. *See, e.g., Cooke*, 265 N.C. at 611, 144 S.E.2d at 842 (neither common law nor [NC shareholder inspection statute] allow "fishing expeditions"); *Carter*, 83 N.C. App. at 64, 348 S.E.2d at 832 (same); *Shamrock Activist Value Fund, L.P. v. iPass Inc.*, 2006 Del. Ch. LEXIS 212, *10 n. 18 (Del. Ch., Dec. 15, 2006) ("For all the good that can come from a shareholder's inspection of corporate books and records, [the inspection statute], if not properly monitored by the Court, can become an effective and troubling tool for harassment and other mischief.").

B.

ATTORNEY'S FEES

{23} N.C.G.S. §§ 55-16-04 and 55-16-05 contain provisions for the award of attorney's fees when a qualified shareholder or director is refused inspection and copying of a corporation's records. If the Court orders inspection and copying of

records for a shareholder under N.C.G.S. § 55-16-04, the Court must also "order the corporation to pay the shareholder's costs (including reasonable attorneys' fees) incurred to obtain the order unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded." N.C.G.S. § 55-16-04 (2014); N.C.G.S. § 55-16-04 cmt. 1 ("The phrase 'in good faith because it had a reasonable basis for doubt' establishes a partially objective standard, in that the corporation must be able to point to some objective basis for its doubt that the shareholder was acting in good faith or had a purpose that was proper).

{24}    Similarly, if the Court orders inspection and copying of records for a director under N.C.G.S. § 55-16-05, the Court has discretion to "order the corporation to reimburse the director's costs, including reasonable counsel fees, incurred in connection with the application." N.C.G.S. § 55-16-05 (2014). Defendant may avoid an award of attorney's fees under N.C.G.S. § 55-16-05 if it establishes that Plaintiff is not entitled to inspection rights.

{25}    Plaintiff acknowledges that Defendant has voluntarily provided copies of all of the requested records – none of which were produced under a Court order compelling inspection and copying – and the Court has now denied Plaintiff's motion to compel inspection and copying of Defendant's original records. Accordingly, there is not an order compelling inspection and copying in this case that may serve to trigger Plaintiff's potential right to attorney's fees under N.C.G.S. § 55-16-04 or § 55-16-05.

{26}    Furthermore, even if an order compelling inspection and copying could be implied from the referee's findings (which the Court finds does not constitute a court order for purposes of N.C.G.S. § 55-16-04 or § 55-16-05), the Court concludes that the evidence of record is sufficient to establish that Defendant had a reasonable basis for doubt about Plaintiff's right to inspect the records he demanded. The Court notes that Plaintiff had previously filed suit against Defendant seeking corporate records in February 2013, voluntarily dismissed that suit with prejudice nine months later, and then threatened to file another lawsuit

against Defendant to seek corporate records shortly thereafter. (Answer, p. 4; Compl., Ex. A.) The Court finds that this evidence, together with Plaintiff's reference to potentially filing "additional lawsuits" in his agent's email to Defendant demanding records and discussing the sale of his shares, his four prior and repetitive requests for corporate records, and Defendant's voluminous (albeit undocumented) prior document production, gave Defendant a reasonable basis to doubt that Plaintiff was acting in good faith and for a proper purpose and instead was attempting to harass Defendant into offering a buyout of his shares. *See, e.g., Cooke*, 265 N.C. at 615 (holding harassment an improper purpose for corporate records demand); *Quantum Tech. Partners IV, L.P. v. Ploom, Inc.*, 2014 Del. Ch. LEXIS 78, *25 (Del. Ch., May 14, 2014) (same); *Towle v. Robinson Springs Corp.*, 719 A.2d 880, 882, 168 Vt. 226, 228 (Vt. 1998) (same).

{27} Accordingly, for the reasons set forth above, the Court concludes that Plaintiff is not entitled to an award of attorney's fees under N.C.G.S. § 55-16-04, and the Court declines to exercise its discretion to award Plaintiff attorney's fees under N.C.G.S. § 55-16-05.

{28} Notwithstanding the Court's conclusions concerning attorney's fees, the Court finds that it is appropriate to shift the full cost of Ms. Spicer's services in this matter to Defendant.[6] Ms. Spicer's services were made necessary, in significant part, because the parties were not able to ascertain which documents Defendant had previously made available to Plaintiff in response to Plaintiff's earlier corporate records demands in 2012 and 2013. As between Plaintiff and Defendant, it was Defendant, as the producing party and owner of the records at issue, which was in the best position to keep track of the records it had produced to Plaintiff. Had Defendant documented its productions more carefully and reliably, Ms. Spicer's services would likely have been unnecessary. Accordingly, for good cause shown

---

[6] Ms. Spicer charged a total of $3,250.00 for her services as referee in this matter. The Court directed the parties to split Ms. Spicer's costs equally, and each party has paid Ms. Spicer the sum of $1,625.00.

and in its discretion, the Court hereby reallocates the cost of Ms. Spicer's fees as referee to Defendant.

III.

JUDGMENT

{29} **IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED** as follows:

1.  Within fourteen (14) days from the entry of this Order, Defendant shall remit to Plaintiff's attorney the total sum of $1,625.00 in reimbursement of the portion of Ms. Spicer's fee paid by Plaintiff;

2.  All other relief requested in Plaintiff's Motion is denied;

3.  Plaintiff is not entitled to any other relief on its claims in this action, and this action is accordingly dismissed with prejudice;

4.  Except as provided concerning the payment of the referee's fees above, each party shall bear his or its own costs incurred in this action.

**SO ORDERED**, this the 25th day of September 2014.