*Note:  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-268

FEBURARY TERM, 2013

| | | |
|---|---|---|
| Lisa Crown | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Caledonia Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Jeffrey W. Lawson | } | DOCKET NO. 159-7-10 Cadm |

Trial Judge: Robert P. Gerety

In the above-entitled cause, the Clerk will enter:

Father appeals from the superior court's order granting mother's motion to modify parental rights and responsibilities (PRR) and parent-child contact (PCC).  We affirm.

Mother and father are parents of C.L., born in September 2007.  Mother filed a parentage action in July 2010.  The parties engaged in mediation and agreed to share legal and physical custody of C.L.  Their agreed-upon PCC schedule did not identify specific days on which contact would occur, but instead provided that the parties would arrange the schedule together each week.  The court issued a final order in September 2010 that reflected the various elements of the parties' agreement.  In September 2011, mother filed a motion to modify PRR and PCC.  She asserted that C.L. was at risk due to father's harassment of mother, his threats against mother, and his unsafe behavior.  Following a hearing, the court granted mother's request, awarding her sole PRR and modifying the PCC schedule.

The court found as follows.  At the time of the initial parentage order, the parties had experienced some communication difficulties but were generally able to resolve their differences.  Their relationship deteriorated very shortly after the issuance of the court's order.  They argued frequently, sometimes in front of C.L.  These arguments had a negative impact on C.L. and on the relationship between C.L. and father.

In October 2010, mother obtained a relief from abuse (RFA) order against father based on a finding that father stalked mother.  The order remains in effect until December 2013.  Father was angry with mother for seeking the RFA order and became increasingly unwilling to discuss issues related to childcare and child contact in a productive way.  He often became angry when mother raised issues about the contact schedule and expressed this anger in front of C.L.  Father denigrated mother in C.L.'s presence and threatened mother.

The court observed that underlying these difficulties, and perhaps at the root of them, was the fact that father had been seriously injured in a September 2007 car accident.  He suffered a traumatic brain injury, among other injuries, and also had mood swings.  Despite a drug therapy regimen, father's symptoms did not begin to stabilize until March 2011.  If father did not take his medication, his behavior could be erratic.  Nonetheless, the court found that father was able to care for C.L. while she was with him.

Based on these and other findings, the court concluded that there had been a real, substantial, and unanticipated change in circumstances since the September 2010 parentage order. It cited the deterioration in the relationship between C.L. and father, as well as mother and father's inability to effectively communicate about parenting issues. It found this state of affairs not in C.L.'s best interests. Applying the factors set forth in 15 V.S.A. § 665, the court concluded that it was in C.L.'s best interests that one parent have sole PRR. It found that mother was C.L.'s primary caretaker and that she had an excellent relationship with C.L. C.L.'s relationship with father, on the other hand, was somewhat strained. While both parents could provide C.L. with love, affection, and guidance, and meet her material needs, mother could provide a safer environment from an emotional standpoint. Mother was also better able to meet the child's present and future developmental needs and foster a positive relationship between father and C.L. As discussed, the parties had no ability to communicate with one another and make joint decisions regarding the child's welfare. Additionally, father had emotionally abused mother in C.L.'s presence and thereby damaged his relationship with C.L. For these reasons, the court concluded that it was in C.L.'s best interests that mother be awarded PRR. The court directed PCC to occur as set forth in mother's proposal and at such other times as the parties might agree. This appeal followed.

Father first argues that the court erred in finding a real, substantial, and unanticipated change in circumstances. He asserts that the parties had ongoing communication difficulties and that it was not unanticipated that the parties' relationship would deteriorate. He suggests that the court should have made the existing PCC order more specific rather than granting mother's motion to modify. In a related vein, father asserts that the court erred in finding that his relationship with C.L. had deteriorated. He argues that the court should not have credited mother's testimony that C.L. had become reluctant to visit father. Father also complains that the court erred in finding that his brain injury led to the deterioration of his relationship with C.L. He maintains that he engaged in erratic behavior both before and after the September 2010 order, and thus, this was not a change in circumstances.

The court may modify a parental rights and responsibilities order upon a showing of real, substantial and unanticipated change of circumstances where the modification is in a child's best interests. 15 V.S.A. § 668. There are no "fixed standards to determine what constitutes a substantial change in circumstances"; instead, the court should be "guided by a rule of very general application that the welfare and best interests of the children are the primary concern in determining whether the order should be changed." Wells v. Wells, 150 Vt. 1, 4 (1988) (block quote format and citation omitted). We will affirm the court's decision unless its discretion was "erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." Jensen v. Jensen, 141 Vt. 580, 581-82 (1982) (citations omitted).

We find no abuse of discretion here. As an initial matter, the court was not obligated to consider whether simply making a more specific PCC schedule would ameliorate the parties' communication problems. It was instead asked to decide whether mother had met her burden of proving changed circumstances in support of her motion to modify. The court's conclusion that mother met her burden is supported by its findings, which in turn are supported by the evidence. Mother testified that, prior to the parentage order, she and father had been able to work together. Following that order, their ability to communicate deteriorated. Father's behavior became very erratic, and he was abusive toward mother in front of C.L., including threatening to kill mother. Mother obtained a RFA order against father. She testified that she and father had no ability to work together, and that father was uncommunicative and argumentative about the visitation schedule. While father maintains that the parties always had communication problems, the court

2

found otherwise, and it is the exclusive role of the superior court to assess the credibility of witnesses and weigh the persuasiveness of the evidence. Cabot v. Cabot, 166 Vt. 485, 497 (1997). There is ample evidence to support the court's conclusion that mother and father could no longer effectively communicate with one another and that this state of affairs was not in C.L.'s best interests.

The court similarly did not err in finding that father currently had a strained relationship with C.L. While father's brain injury occurred in 2007, his symptoms, including mood swings, did not begin to stabilize until March 2011. Regardless of the cause of father's emotional volatility, his behavior, including threatening to kill mother in C.L.'s presence, had a negative impact on C.L. Mother testified to this effect. She also explained that C.L. had recently become whiny prior to her visitation with father and did not act like her normal "chipper" self. Based on this evidence, the court could reasonably conclude that C.L.'s relationship with father had deteriorated since September 2010.

Finally, father argues that the court failed to exercise independent judgment because it adopted mother's proposed PCC schedule. Father proposed that he have C.L. every weekend, or alternatively, that he have contact every other weekend and have C.L. for two nights during the off weeks. Mother proposed that father see C.L. on alternate weekends and have one dinner visit per week during the off weeks.

As we have repeatedly recognized, the superior court has broad discretion in crafting a PCC schedule that serves the best interests of a child, and its decision will not be reversed unless clearly unreasonable on the facts presented or based on unfounded considerations. Gates v. Gates, 168 Vt. 64, 74 (1998). Father fails to show error here. The court was not obligated to craft a "compromise" between these two proposals, as father suggests. It is evident that the court considered mother's proposal to be in C.L.'s best interests, and the court did not err by adopting mother's proposal verbatim. See, e.g., Towle v. Robinson Springs Corp., 168 Vt. 226, 229 (1998) ("The trial court may adopt proposed findings verbatim."); see also V.R.C.P. 52(a)(2) ("Findings of fact shall not be set aside unless clearly erroneous, notwithstanding the verbatim adoption by the court of a party's proposed findings.").

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Brian L. Burgess, Associate Justice

3